**John R. BLOCK, Secretary of Agriculture, U.S. Department of Agriculture, Appellant,**

v.

**U.S. INTERNATIONAL TRADE COMMISSION, Appellee.**

**Appeal No. 85-1934.**

United States Court of Appeals, Federal Circuit.

Nov. 29, 1985.

---

Claud A. Daigle, Jr., of the U.S. Dept. of Justice, Washington, D.C., for appellant. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen. and Vito J. DiPietro, Director.

Wayne W. Herrington, of the U.S. Intern. Trade Commission, Washington, D.C., for appellee. With him on the brief were Lyn M. Schlitt, Gen. Counsel, and Michael P. Mabile, Asst. Gen. Counsel, Washington, D.C.

Before MARKEY, Chief Judge, DAVIS and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal of the United States International Trade Commission's (ITC) decision to terminate its self-initiated investigation entitled *In re Certain Apparatus for Flow Injection Analysis and Components Thereof*, and to vacate the initial determination issued by the ITC's administrative law judge (ALJ) in that investigation. Although this case presents interesting and complex issues, we must hold that the ITC's decision is not an appealable final determination under 19 U.S.C. § 1337(c) (1982). Therefore, this controversy is not currently reviewable by this court and ITC's motion to dismiss the appeal must be granted.

I.

The ITC's investigation was initiated on its own motion [1] to determine whether the importation and sale in the United States of certain flow injection apparatus and components thereof infringed United States Patent No. 4,013,413 (the '413 patent) and therefore violated § 337 of the Tariff Act of 1930 (19 U.S.C. § 1337). The '413 patent is owned by the USDA. The invention claimed in the '413 patent relates to the

---

1. Apparently in response to a request by the United States Department of Agriculture (USDA).

automatic continuous chemical flow analysis of liquid samples by operation of a flow injection analyzer, which is similar to a Skeggs analyzer. The Skeggs analyzer includes a device that holds the samples in order so that they are drawn sequentially into the sampling stream, tubing to facilitate the flow of samples to a detector, and posts to insert air and reagent into the flow stream. The flow stream consists alternatively of segments of sample, air, and reagent. The '413 patent provides for a more rapid continuous flow because it removes air bubbles from the analytical flow stream by utilizing two flow streams connected by a transfer valve. This rapid-flow injection analysis concept permits sampling at rates up to 150 samples per hour, while the old Skeggs analyzer was limited to 10–60 samples per hour.

Shortly after the investigation was initiated,[2] the respondents [3] requested reexamination of the '413 patent before the United States Patent and Trademark Office (PTO). The PTO granted the request for reexamination and then suggested that all the original claims of the '413 patent were invalid due to prior art which was not cited during the examination of the original patent application. (This was not, however, the end of the reexamination.)

The respondents' simultaneous motion to stay the § 1337 ITC investigation pending completion of the PTO reexamination had been denied by the ALJ. Accordingly, after an evidentiary hearing, the ALJ filed an initial determination upholding the validity of the '413 patent as applied to the same prior art which was cited by the PTO in the initial reexamination action. The ALJ also concluded that the respondents' devices infringed the '413 patent and their importation injured an industry within the United

States in violation of § 1337. Respondents then petitioned the ITC for review of the initial determination, citing the ongoing character of the PTO reexamination. In response, the ITC ordered the investigation suspended pending completion of the reexamination proceeding. Subsequently, during reexamination, the USDA agreed to make certain amendments to all the claims of the '413 patent to overcome the initial PTO rejection and reexamined patent claims were issued.

Thereafter, the ITC ultimately vacated the ALJ's initial determination and issued an order terminating the investigation as abated because of the amendment of all the original claims of the '413 patent by the reexamination certificate. The ITC found that (1) amended claims in a reexamination certificate should be treated like new claims and (2) the reexamination statute, 35 U.S.C. § 307(b), makes the intervening rights provision of 35 U.S.C. § 252 (governing the effect of reissue patents) applicable to amended and new claims in reexamination certificates. Furthermore, the ITC noted that the USDA amended the claims to overcome the reexamination examiner's prior art rejection of the original claims and that this implied a substantive change in claim coverage. The present appeal is taken from that decision.

## II.

The threshold question is whether the ITC's decision to terminate its investigation as "abated" is an appealable "final determination" under 19 U.S.C. § 1337(c).[4]

Appellee ITC contends that (1) a final determination of the ITC under 19 U.S.C. § 1337(c) is a final administrative decision on the merits that excludes or refuses to

---

2. The investigation was assigned by the ITC to an ALJ.

3. Six parties, Bifok AB and five related business entities involved in the development, importation, and marketing of flow injection analysis apparatus manufactured by Bifok, were listed as respondents. The USDA was not named as a party and never became a party to the investigation.

4. 19 U.S.C. § 1337(c) states that:

"Any person adversely affected by a final determination of the Commission under subsection (d), (e), or (f) of this section may appeal such determination to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5."

exclude articles from entry under subsection (d), (e), or (f); and (2) the ITC decision in this case is not a final determination because it is a determination not to decide the case on the merits and therefore is analogous to a dismissal without prejudice.

Appellant seems to recognize that the ITC's order is not intrinsically a final determination because the investigation was dismissed as abated without a finding as to whether 19 U.S.C. § 1337 was violated. Nonetheless, appellant argues that appellate jurisdiction under § 1337 is not limited to ITC orders that are intrinsically final determinations. Rather, appellant submits that it is the substance and not the form of the order that is determinative.[5] Because the ITC order terminated the investigation and is said to have involved the denial of substantive rights, the Secretary of USDA contends that it has the same operative effect as a final determination. Appellant also alleges that the opinion accompanying the order will bind appellant in later proceedings because of the doctrines of res judicata and collateral estoppel.

 We hold that the ITC's order is neither intrinsically a final determination nor the equivalent of a final determination. A final determination is "a final administrative decision *on the merits*, excluding or refusing to exclude articles from entry" under 19 U.S.C. § 1337(d), (e), or (f). *Import Motors Ltd. v. U.S. Int'l Trade Comm'n*, 530 F.2d 940, 944, 188 USPQ 490, 494 (CCPA 1976) (emphasis added). With this definition in mind, it logically follows, as the Court of Customs and Patent Appeals ruled in *Refractarios Monterrey, S.A. v. Ferro Corp.*, 606 F.2d 966, 971 n.

15, 203 USPQ 568, 574 n. 15 (CCPA 1979), *cert. denied*, 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776 (1980), that "[a] dismissal in an ITC proceeding without a finding is not a 'final determination'." In this case, the ITC did not rule on the merits but terminated its investigation and wholly vacated the ALJ's initial determination. Thus, this action could not intrinsically be a final determination within the meaning of 19 U.S.C. § 1337(c) because it was not a decision to exclude or refuse to exclude articles from entry under 19 U.S.C. § 1337(d), (e) or (f).

Appellant does not truly challenge this particular conclusion but contends, rather, that the ITC's order was the equivalent of a final determination. This argument is misplaced. Although the ITC order did terminate this investigation, it was without prejudice. Appellant is free to request a second investigation under 19 U.S.C. § 1337(b)(1) based on the reexamined claims and to proceed through representation by the Department of Justice.[6] In such new proceedings, USDA will be entirely free to make any arguments it considers appropriate.[7]

 In this connection, we stress that appellant will not be bound in a new investigation by res judicata or collateral estoppel. A determination is conclusive in a subsequent action between the same parties only when the "issue of fact or law is actually litigated *and* determined by a valid and final judgment." Restatement (Second) of Judgments § 27 (1982) (emphasis added). *See also Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 219 USPQ 1142 (Fed.Cir.1983). One important factor that is considered in determin-

---

5. In support of its argument, appellant cites *Import Motors Ltd. v. U.S. Int'l Trade Comm'n*, 530 F.2d 940, 945–46, 188 USPQ 490, 495 (CCPA 1976) where the court stated that "an order of the Commission * * * could have the same operative effect, in terms of economic impact upon those terminated, as a final determination * * *. Substance, not form must control."

6. 19 U.S.C. § 1337(b)(1) provides that "The Commission shall investigate any alleged violation of this section on complaint under oath * * *."

7. Both the ITC's motion to dismiss and its brief as appellee state:

"The Commission's termination of the present investigation does not preclude the institution of a second investigation based on the reexamined claims, nor can it prejudice the outcome of such an investigation. Indeed, it anticipates the possibility of a second investigation based on the reexamined claims. It is therefore analogous to a dismissal without prejudice."

ing the finality of a decision for the purposes of preclusion is whether the decision was ever subject to appeal. *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). In *Lummus Co.*, 297 F.2d at 89, Judge Friendly stated that whether a "non-final" judgment "ought nonetheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *See also Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). The Restatement (Second) of Judgments § 13 comment g (1982) also indicates that a decision that is not subject to appeal is not final for the purposes of issue preclusion. *See also Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 227

USPQ 543, (Fed.Cir.1985). Since we have held that this court does not have jurisdiction because the ITC did not enter an appealable final judgment, there has been no opportunity for appellate review and appellant will not be bound in any way by the statements in the ·opinion accompanying the ITC order.[8]

We must conclude that the ITC's decision was neither a final determination nor the equivalent of a final determination. Appellant has no present right to appeal the matters in question to this court. The appellee's motion to dismiss the appeal is therefore granted.

*Appeal Dismissed.*

---

**8.** *See* footnote 7, *supra.* As the ITC itself there recognizes, there is no·other reason to consider its decision to have been sufficiently "firm and stable" to be granted any preclusive effect. *See* Restatement (Second) of Judgments § 13, *supra,* comments a and g.