**AMGEN, INC., Appellant,**

v.

**UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,**

**Chugai Pharmaceutical Co., Ltd. and Chugai Pharma U.S.A., Inc., Intervenors.**

No. 89–1523.

United States Court of Appeals, Federal Circuit.

April 27, 1990.

S. Leslie Misrock, Pennie & Edmonds, New York City, argued, for appellant. D. Dennis Allegretti, Jon O. Nelson, John J. McDonnell, and Paul H. Berghoff, Allegretti & Witcoff, Ltd., Chicago, Ill., were on the brief, for appellant. Also on the brief, were Paul Plaia, Jr., Cecilia H. Gonzalez, Howrey & Simon, Washington, D.C., and Robert D. Weist and Steven M. Odre, Amgen, Inc., Thousand Oaks, Cal., of counsel.

Jean H. Jackson, Office of the Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued for appellee. With her on the brief, were Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel and Abigail A. Shaine.

Kurt E. Richter, Morgan & Finnegan, New York City, argued for intervenors, Chugai Pharmaceutical Co., Ltd., Chugai Pharma U.S.A., Inc. With him on the brief, were Eugene Moroz, William S. Feiler, Michael P. Dougherty and Valerie Fedowich. Also on the brief, were Will E. Leonard, Jon F. Tuttle, Jonathan Hemenway Glazier, Edward R. Easton, Philippe M. Bruno and Kenneth J. Nunnenkamp, Dorsey & Whitney, Washington, D.C., of counsel.

Mary Helen Sears, Peter M. Kirby and William J. McNichol, Jr., Ginsburg, Feldman & Bress, Chartered, Washington, D.C., were on the brief, for amicus curiae, Mayflower Imports, Inc.

Before RICH and ARCHER, Circuit Judges, FRIEDMAN, Senior Circuit Judge.

RICH, Circuit Judge.

Amgen, Inc. (Amgen) appeals from the April 10, 1989 Order of the United States International Trade Commission (Commission), Inv. No. 337–TA–281 entitled *Certain Recombinant Erythropoietin*, 10 USPQ2d 1906 (USITC 1989), dismissing its complaint for lack of subject matter jurisdiction. We vacate and remand.

## BACKGROUND

Erythropoietin is a hormone which controls the synthesis of red blood cells in bone marrow and which is useful for treating patients suffering from anemia. Because the amount of erythropoietin naturally present in humans and animals is very small, it is impractical to obtain erythropoietin from natural sources for the purpose of treating anemia. Therefore, scientists from the emerging field of biotechnology have used recombinant DNA technology to produce genetically-altered cells (host cells) which produce large amounts of erythropoietin. To simplify the recombinant DNA procedure, the particular DNA sequence, or gene, responsible for a desired trait, here the production of erythropoietin, is isolated and removed from human cells. The isolated DNA sequence is then "recombined" with the DNA present in the host cells. As a result, the host cell is genetically-altered so as to express the desired trait: in this case, to produce erythropoietin. Erythropoietin produced in this way is referred to as recombinant erythropoietin, or rEPO, in order to distinguish it from naturally-occurring erythropoietin.

Appellant Amgen is the owner by assignment of U.S.Pat. No. 4,703,008 (the '008 patent), which has claims directed toward recombinant DNA sequences, vectors and host cells used to produce rEPO. The '008 patent contains no claim to the product

rEPO itself, and no claim to any process of making rEPO, or any other process.[1]

On January 4, 1988, Amgen filed a complaint with the Commission, alleging that Chugai Pharmaceutical Co. of Japan and its U.S. subsidiary, Chugai Pharma U.S.A., Inc., (collectively Chugai) had violated former section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337; See also 19 U.S.C. § 1337a by importing recombinant erythropoietin (rEPO) made by a process covered by the '008 patent.[2] On February 2, 1988, the Commission voted to institute an investigation, and referred the matter to an Administrative Law Judge (ALJ). During the course of the proceeding, Congress passed, on August 23, 1988, the 1988 Trade Act, which substantially amended former section 1337 and repealed former section 1337a. Because the Trade Act stated that amended section 1337 would apply to all pending Commission investigations, Amgen's complaint became one under section 1337(a)(1)(B)(ii), which reads as follows:

**(a) Unlawful activities; covered industries; definitions**

**(1)** Subject to paragraph (2), the following are unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provision of law, as provided in this section:

\*      \*      \*      \*      \*      \*

**(B)** The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that—

\*      \*      \*      \*      \*      \*

**(ii)** are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent.

The primary issue throughout the proceedings in the Commission was whether the rEPO produced and imported by Chugai is "made ... by means of a process covered by" a claim of the '008 patent, even though the '008 patent does not contain, as Amgen calls them, "conventional process claims." Amgen presented two related arguments before the ALJ: (1) Chugai's process for producing rEPO necessarily requires the use of Amgen's patented DNA sequences, vectors and host cells, and thus is "covered" by the claims of the '008 patent; and (2) the claims to the host cells are "unique hybrid claims" which cover not only the cells themselves, but also the unique intracellular life processes inherently performed by the host cells.

After conducting a full investigation on the merits, the ALJ delivered an extensive, 188 page Initial Determination on January 10, 1989. While finding that the Commission does have subject matter jurisdiction over Amgen's complaint, the ALJ determined that the claims of the '008 patent do not "cover" Chugai's process for producing

---

**1.** The application which matured into the '008 patent originally contained claims to the process of producing rEPO. The Patent and Trademark Office (PTO) Examiner rejected these claims, at least in part, because he considered the claims to be to the application of an old process to new starting materials and thus not patentable on the authority of *In re Durden,* 763 F.2d 1406, 226 USPQ 359 (Fed.Cir.1985). The process claims were cancelled prior to issuance of the '008 patent.

**2.** As discussed later in this opinion, section 1337 was amended, and section 1337a was deleted, by the Omnibus Trade and Competitiveness Act of 1988 (1988 Trade Act). References in this opinion to "former" sections 1337 and 1337a are to the versions prior to the 1988 amendments, and are otherwise to the amended versions.

Former section 1337 prohibited "[u]nfair methods of competition and unfair acts in the

importation of articles into the United States ..., the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States...."

Former section 1337a reads as follows:
**Importation of products produced under process covered by claims of unexpired patent**

The importation for use, sale, or exchange of a product made, produced, processed, or mined under or by means of a process covered by the claims of any unexpired valid United States letters patent, shall have the same status for the purposes of section 1337 of this title as the importation of any product or article covered by the claims of any unexpired valid United States letters patent.

rEPO, and thus that no violation of section 1337(a)(1)(B)(ii) occurred.

On April 10, 1989, after review of the ALJ's Initial Determination, the Commission, disagreeing with the ALJ on the jurisdiction issue, entered an order terminating the investigation for lack of subject matter jurisdiction. In an accompanying Opinion joined by a majority of four Commissioners, the Commission adopted the ALJ's extensive analysis of the scope of section 1337(a)(1)(B)(ii) but concluded that the existence of a process patent claim was a jurisdictional prerequisite for an investigation under section 1337(a)(1)(B)(ii). Since, concluded the Commission's April 10 Opinion, the '008 patent does not contain any process patent claims, the Commission must dismiss not on the merits, but for lack of subject matter jurisdiction. This appeal followed.

## OPINION

### A. *Jurisdiction*

■ This court's authority to review a decision of the Commission is limited by section 1337(c), which states in part:

Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) of [section 1337] may appeal such determination ... to the United States Court of Appeals for the Federal Circuit....

This language has been interpreted as requiring a "final determination decision *on the merits*, excluding or refusing to exclude articles from 'entry'" under section 1337(d), (e), (f) or (g). *Block v. U.S. Int'l Trade Comm'n,* 777 F.2d 1568, 1571, 228 USPQ 37, 38 (Fed.Cir.1985) (emphasis in original).[3] Thus, both the Commission and Chugai have filed motions to dismiss on the ground that this court is without jurisdiction to review the Commission's April 10, 1989 Order, since that Order constituted a dismissal for lack of subject matter juris-

diction and not a final determination on the merits.

In response, Amgen contends that the Commission's April 10 Order is intrinsically a final determination not to exclude articles from entry, and thus is appealable under section 1337(c). We agree.

The fact that the Commission termed its dismissal as one for lack of subject matter jurisdiction rather than as one on the merits is not dispositive. If this fact were dispositive, then the Commission could effectively shield all negative determinations from judicial review simply by labelling the determination as a dismissal for lack of jurisdiction. Such a result would be clearly contrary to the statutory scheme, which provides for judicial review of both positive and negative determinations.[4] Instead, this court has recognized that when a decision is intrinsically a final determination, i.e., a determination *on the merits*, then that decision is appealable under section 1337(c). *Block; Import Motors Ltd. v. U.S. Int'l Trade Comm'n,* 530 F.2d 940, 944, 188 USPQ 491, 494 (CCPA 1976).

In *Block*, this court reviewed an Order of the Commission terminating an investigation, initiated on its own motion, after the patent forming the basis for the alleged section 1337 violation was substantially amended during reexamination proceedings in the PTO. In concluding that the Order was not an intrinsically final determination, this court found the lack of any findings by the Commission to be critical; nothing in the termination Order prejudiced the Commission or any private party in a future proceeding. *Block,* 777 F.2d at 1571–72, 228 USPQ at 38–39. To the contrary, the Commission in this case made one very important finding: that the claims of the '008 patent do not, in fact, cover a process. This finding clearly reaches the merits of Amgen's complaint and determinatively decides Amgen's right to proceed in a section 1337 action; even assuming that the Commission's dismissal is not giv-

---

3. While *Block* was decided with reference to former section 1337, none of the parties here argues, and we see no reason to conclude, that

the proper interpretation of section 1337(c) has been changed.

4. *See* section 1337(c).

en res judicata effect,[5] any future action brought by Amgen would necessarily raise the same issue, and would presumably be dismissed for the same reason.

■ Further, we are of the opinion that the Commission should have treated Amgen's complaint on the merits and not on jurisdictional grounds. As is very common in situations where a tribunal's subject matter jurisdiction is based on the same statute which gives rise to the federal right,[6] the jurisdictional requirements of section 1337 mesh with the factual requirements necessary to prevail on the merits. In such a situation, the Supreme Court has held that the tribunal should assume jurisdiction and treat (and dismiss on, if necessary) the merits of the case. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL–CIO–CLC,* 457 U.S. 15, 21, 102 S.Ct. 2202, 2206, 72 L.Ed.2d 639 (1982); *see also Do–Well Machine Shop v. United States,* 870 F.2d 637, 639–40 (Fed. Cir.1989).

In *Bell v. Hood,* plaintiffs brought suit against the Federal Bureau of Investigation, seeking money damages based on alleged violations of their rights under the Fourth and Fifth Amendments to the Constitution. The District Court dismissed for lack of jurisdiction on the ground that the action did not "arise under the Constitution or laws of the United States." The Supreme Court reversed, holding that since the complaint on its face clearly sought relief based on the Constitution, the District Court must assume jurisdiction to decide whether the allegations state a claim upon which relief can be granted.

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Bell v. Hood,* 327 U.S. at 682, 66 S.Ct. at 776 (citations omitted).

We deem this analysis to be applicable to the present case. Amgen's complaint alleged that Chugai was importing rEPO and that the rEPO was made by a process covered by the '008 patent; thus, on its face the complaint came within the jurisdiction of the Commission. The fact that Amgen was later unable to sustain these allegations is not material to the issue of *jurisdiction.* We hold that the Commission should have assumed jurisdiction, and, if the facts indicate that Amgen cannot obtain relief under section 1337(a)(1)(B)(ii), the Commission should have dismissed on the merits.[7]

---

5. Dismissals for lack of jurisdiction may be given en res judicata effect as to the jurisdictional issue. *See Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 706, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558 (1981).

6. In a concurring opinion issued with the Commission's April 10, 1989 Order, two Commissioners indicated that they would dismiss Amgen's complaint on the merits because they considered the Commission's jurisdiction to be based not on section 1337(a)(1) but on section 1337(b)(1), which states in pertinent part:

The Commission shall investigate any alleged violation of this section on complaint under oath or upon its initiative.... The Commission shall conclude any such investigation, and make its determination under this section, at the earliest practicable time....

Because we conclude that the dismissal of Amgen's complaint should have been on the merits even assuming that jurisdiction is based on section 1337(a)(1), we do not reach the question of whether the agency correctly based its jurisdictional grant on section 1337(a)(1).

7. The Commission argues that the case of *Federal Trade Comm'n v. Raladam Co.,* 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324 (1931) and *Albert v. Kevex Corp.,* 729 F.2d 757, 221 USPQ 202 (Fed. Cir.1984) require a contrary result. We dis-

The Supreme Court in *Bell v. Hood* recognized two exceptions to the above analysis. First, where the alleged claim is immaterial and is brought solely for the purpose of obtaining jurisdiction in a particular forum, dismissal should be jurisdictional and not on the merits. This exception is not applicable here, since, as in *Bell v. Hood*, Amgen's complaint under section 1337 forms the sole basis of its claim for relief. Second, when the alleged claim is wholly insubstantial and frivolous, then dismissal should likewise be for lack of jurisdiction. As discussed *infra*, though we disagree with Amgen's broad construction of section 1337(a)(1)(B)(ii), we cannot say that their complaint is wholly insubstantial or frivolous.

Since the Commission's dismissal for lack of subject matter jurisdiction was intrinsically a final decision on the merits, and should have been phrased as a dismissal on the merits, we hold that this court has jurisdiction to review the Commission's Order. Therefore, the Commission's and Chugai's motions to dismiss are denied.

### B. *The Scope of Section 1337(a)(1)(B)(ii)*

#### 1. Are Amgen's Host Cell Claims Unique?

In its brief, Amgen repeatedly asks us to phrase the issue in this appeal as being "whether section 1337(a)(1)(B)(ii) requires traditional process claims." We do not agree that this is, in fact, the issue. However, their formulation of the issue as such begs the following question: does the '008 patent contain any "non-traditional" process claims? Therefore, before analyzing the scope of section 1337(a)(1)(B)(ii), we will first decide whether there is any difference between Amgen's host cell product claims and any other product claim which would merit giving the host cell claims special treatment for the purpose of section 1337.

We think there is not. On their face, the host cell claims of the '008 patent are limited to just that: host cells.[8] In *Diamond v. Chakrabarty*, 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980), the Supreme Court limited its analysis to whether the microorganisms claimed in Chakrabarty's patent application (analogous to the host cells claimed in the '008 patent) were to a "manufacture" or a "composition of matter" within the meaning of 35 U.S.C. § 101.[9] *See Diamond v. Chakrabarty*, 447 U.S. at 307, 100 S.Ct. at 2206. It is also possible by analogy to think of a host cell as being a kind of living "machine" in the sense that it performs certain intracellular processes in the course of producing rEPO. However, that would not make the host cell any different from any mechanical machine

agree. In *Raladam*, the Court expressly distinguished a proceeding initiated *sua sponte* by the Commission from one like the present where one party is challenging the actions of another. *Raladam*, 283 U.S. at 654, 51 S.Ct. at 592 ("A proceeding under § 5 is not one instituted before the Commission by one party against another. It is instituted by the Commission itself, ... and the Commission cannot, by assuming the existence of competition, ... give itself jurisdiction...."). This distinction is consistent with Rule 12 of the Federal Rules of Civil Procedure which requires that the unchallenged allegations of a complaint be construed favorably to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In a proceeding initiated solely by the Commission, there is no complaint to which deference is necessary.

In *Albert*, the jurisdictional finding which the district court failed to make (the existence of interfering patents) did not mesh with the finding on the merits which it did make (that Ke-

vex's patent was invalid). *Albert*, 729 F.2d at 760–62, 221 USPQ at 205–06. In the present case, the jurisdictional finding required under section 1337(a)(1)(B)(ii) is the same as one of the findings required to prevail on the merits.

8. Claim 4 of the '008 patent is representative of the host cell claims involved on this appeal. It reads:

    4. A procaryotic or eucaryotic host cell transformed or transfected with a DNA sequence according to claim 1, 2 or 3 in a manner allowing the host cell to express erythropoietin [rEPO].

9. 35 U.S.C. § 101 reads:

    Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

which performs certain "intramachinery"[10] processes in the course of producing whatever the machine is designed to produce. A host cell claim does not "cover"[11] intracellular processes any more or less than a claim to a machine "covers" the process performed by that machine. We conclude that there is nothing unique or "non-traditional" about Amgen's host cell claims.

Consequently, Amgen's argument for relief under section 1337(a)(1)(B)(ii) comes down to this: Chugai's process performed abroad would *infringe* the '008 patent *if* performed in the United States, because *use* of a patented *article* is *infringement* of an article claim. Therefore, Amgen argues, the article claims of the '008 patent "cover" the process performed abroad by Chugai, and importation of goods made by that process is within the terms of section 337. In view of this argument and the fact that Amgen's host cell claims are legally indistinguishable from any other article claim, the issue in this case must be phrased generally as whether section 1337(a)(1)(B)(ii) was intended to prohibit the importation of articles made abroad by a process in which a *product* claimed in a U.S. patent is used, namely the new host cell.

### 2. Statutory Interpretation

■ The resolution of this issue turns on the interpretation of the phrase "a process covered by the claims of a ... patent" in section 1337(a)(1)(B)(ii). As in all questions of statutory construction, we look first to the plain meaning of the statutory language, and then to other extrinsic aids such as legislative history, rules of statutory construction, and the construction placed on the statute by the agency which administers it, the ultimate objective being to discern, if possible, the intent of Congress. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988).

■ The parties expend much effort trying to convince us of what exactly the

plain meaning of the word "covered" is. While the meaning of this word can vary slightly depending on the context, we are of the opinion that in normal parlance among patent lawyers, to whom patent statutes are directed, a patent "covering" a process is a patent containing at least one claim defining a process.

### 3. The Legislative History

The key language in section 1337(a)(1)(B)(ii) ("process covered by the claims") was originally introduced in former section 1337a and was not altered by the 1988 Trade Act. Therefore, we begin our analysis of the legislative history with that of former section 1337a.

Former section 1337a was enacted in response to the Court of Customs and Patent Appeals' (CCPA's) decision in *In re Amtorg Trading Corp.*, 75 F.2d 826, 24 USPQ 315 (CCPA), *cert. denied*, 296 U.S. 576, 56 S.Ct. 102, 80 L.Ed. 407 (1935). In *Amtorg*, the CCPA reversed its earlier precedent and held that importing a product made abroad *by a patented process* was *not* an unfair trade practice under former section 1337. *Amtorg*, 75 F.2d at 834, 24 USPQ at 323. The CCPA found nothing in the legislative history of the Tariff Act of 1930 (which enacted former section 1337) which would justify extending patent protection under section 1337 beyond the protection provided by substantive patent law. *Id.*

In response, several bills were introduced into Congress, the one that became former section 1337a being H.R. 8285, 76th Congress. Both the House and Senate reports accompanying H.R. 8285 indicate that former section 1337a was specifically directed toward *process patents* and the *Amtorg* decision.

This bill is designed to correct the present problem which was created when the Court of Customs and Patent Appeals in the case *In re Amtorg Trading Corporation* reversed its former deci-

---

**10.** I.e., inside the machine.

**11.** As that word is used in section 1337(a)(1)(B)(ii). The meaning of this word in

the context of the statute is discussed at length, *infra.*

sions and held that the importation of products made abroad *in accordance with a United States process patent* without consent of patentee was not regarded as an unfair method of competition. [Emphasis ours.]

H.R.Rep. No. 1781, 76th Cong., 3d Sess. 1 (1940); *see also* S.Rep. No. 1903, 76th Cong., 3d Sess. 1 (1940). There is no indication in either the House or Senate reports, or the House committee hearings report,[12] that former section 1377a was intended to prohibit the importation of goods made by a process which merely used abroad a product, apparatus, or material patented in this country.

Amgen contends that Congress' intent to prohibit such activity can be seen from the legislative history of the 1988 Trade Act which repealed former section 1337a and created section 1337(a)(1)(B)(ii). The only support which Amgen gives for this contention is the following general statement from one of the sponsors of the Trade Act, Senator Lautenberg:

A continuing goal of Congress is to encourage innovation by providing meaningful protection for the inventions and discoveries of American inventors and for the manufacture of innovative products made by American workers. The emerging biotechnology industry has pioneered a revolutionary genetic engineering technology that produces recombinantly derived materials used to make previously unavailable products.

With respect to section 1342 of the Trade Act (title 19), this bill reenacts prior section 337a of the Tariff Act of 1940 (as 337(a)(1)) which addresses protection of U.S. business from importation of products made outside of the United States by a process covered by a claim of a U.S. patent.

Section 337(a)(1) (a reenactment of section 337a) will provide the assistance necessary for emerging U.S. industries, such

as the biotechnology industry, to compete in a marketplace without interference due to unfair acts of foreign competitors. The continued broad jurisdiction of the International Trade Commission will help U.S. industry address the unfair activity of foreign competitors who, for example, import products manufactured using patented genetic engineering technology. Merely moving manufacture offshore does not absolve the wrongdoer from the requirement to compete fairly. This Trade Act protection prohibits the foreign enterprise from taking jobs from American workers by doing offshore that which they could not lawfully do in the United States.

This statement supports the Commission's position just as much as, if not more than, Amgen's position. As noted above, former section 1337a was enacted to prohibit imports made using patented *processes*, and not to prohibit imports made by a process *using* patented *articles*. The Commission consistently interpreted and applied former section 1337a in this way for over 40 years. Senator Lautenberg was certainly aware of the prior interpretation of former section 1337a, yet twice states that amended section 1337 merely *reenacts* former section 1337a. He would not have so stated if he had intended a substantive change in its scope.

In fact, the only portion of Senator Lautenberg's statement (and of the entire legislative history of the 1988 Trade Act, for that matter) which supports Amgen's position is the last sentence: "Trade Act protection prohibits ... doing offshore that which they could not lawfully do in the United States." However, we do not consider that what Amgen attempts to make of this single sentence, in light of the remaining legislative history of both the 1940 enactment of former section 1337a and the 1988 amendments to section 1337, to be "clearly expressed legislative intention" sufficient to interpret the statute contrary

---

**12.** *Importation of Goods Covered by United States Patents: Hearings on H.R. 7851 Before the House Committee on Patents Subcommittee on* *Phosphate Rock Process Patents,* 75th Cong., 3d Sess. (1938). H.R. 7851 was a predecessor version of H.R. 8285 which died in committee.

to its plain meaning. *See Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395, 13 USPQ2d 1628, 1630 (Fed.Cir.1990); *Johns–Manville*, 855 F.2d at 1559.[13]

It is our impression from study of this case that the possibility of doing what Chugai is doing in Japan—using Amgen's patented host cells in the larger process by which it produces rEPO through utilization of the life processes of the host cells—is something which was not considered by the Congress in connection with the 1988 revision of section 1337. Consequently it did nothing to deal with the situation, which it certainly did not discuss. Amgen has emphasized that the problem it has presented is one of great importance and presents an issue "of first impression for this or any other Court." It says we are faced with "a precedent-setting question of exceptional importance." This confirms our impression that Congress did not give it a thought. If there is a need to alter the understanding of the expression "process covered by the claims," which has persisted unchanged for nearly half a century, in order to take care of Amgen's problem, it is a task for Congress,[14] which can explore its impact and side effects, and not for this court.

## C. *Conclusion*

Since none of the claims of the '008 patent cover the process performed overseas by Chugai, Amgen's complaint under section 1337(a)(1)(B)(ii) must be dismissed. However, the Commission should have done so on the merits, and not for lack of jurisdiction. Therefore, we vacate the Commission's April 10, 1989 Order, and remand for entry of a final determination dismissing the complaint on the merits.

**13.** Amgen also points out that 35 U.S.C. § 271(g), also enacted by the 1988 Trade Act, specifically uses the phrases "process patented" and "process patent," and argues that Congress' failure to use similar language in section 1337(a)(1)(B)(ii) indicates that Congress meant something different by "process covered by ..." in section 1337(a)(1)(B)(ii). We see no evidence to support Amgen's argument, and conclude that the most likely reason Congress used the particular language in section 1337(a)(1)(B)(ii)

COSTS

Amgen to bear the costs.

VACATED AND REMANDED.

was to maintain the same language used in, and consequently the same scope of, former section 1337a.

**14.** We are aware that the ITC decision in this case has, in fact, led to the introduction of H.R. 3957 in the present Congress, to amend, inter alia, section 1337(a)(1)(B). See 39 PTC Jour. 262, 279 (BNA Feb. 8, 1990).