Dissenting opinion filed by Circuit Judge Wallach.
Prost, Chief Judge.
*961 Amarin Pharma, Inc. ("Amarin") appeals the decision of the International Trade Commission ("Commission"), which determined not to institute an investigation and, accordingly, dismissed Amarin's complaint. The Commission held that Amarin's complaint failed to allege a cognizable claim based on an unfair method of competition or unfair act under 19 U.S.C. § 1337(a)(1)(A). We affirm.
I
Amarin markets Vascepa® capsules, a prescription drug that consists of 1 gram of eicosapentaenoic acid (the omega-3 acid commonly known as "EPA") in a 1-gram capsule. The EPA in Vascepa® is in ethyl ester form and is synthetically produced from fish oil. Amarin obtained approval from the Food and Drug Administration ("FDA") to market and sell Vascepa®, which is designed to reduce triglyceride levels in adult patients with severe hypertriglyceridemia. Vascepa® is the only purified ethyl ester E-EPA product sold in the United States as an FDA-approved drug.
On August 30, 2017, Amarin filed under oath a complaint alleging violations under § 337 of the Tariff Act of 1930, as amended. J.A. 4-114 (Compl.). The complaint alleges that certain companies were falsely labeling and deceptively advertising their imported synthetically produced omega-3 products as (or for use in) "dietary supplements," where the products are actually "new drugs" as defined in the Food, Drug, and Cosmetic Act ("FDCA") that have not been approved for sale or use in the United States. J.A. 9 ¶ 1.
Specifically, Amarin articulated two claims in its complaint: (1) that the importation and sale of the articles is an unfair act or unfair method of competition under § 337 because it violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), see J.A. 31-56 ¶¶ 53-105; and (2) that importation of the articles violates the Tariff Act "based upon the standards set forth in the *962 FDCA," see J.A. 56 ¶ 106. By way of relief, Amarin's complaint seeks an order under § 337(d) that would exclude synthetically produced omega-3 products from entry into the United States, as well as a cease-and-desist order under § 337(f) to prohibit the proposed respondents from importing, using, or selling synthetically produced omega-3 products. J.A. 112-13 ¶¶ D-F.
After Amarin filed its complaint, the FDA submitted a letter urging the Commission not to institute an investigation and instead to dismiss Amarin's complaint. J.A. 627-37. In the FDA's view, the FDCA prohibits private enforcement actions, including unfair trade practice claims that seek to enforce the FDCA. J.A. 630. The FDA contended that the FDCA precludes any claim that would "require[ ] the Commission to directly apply, enforce, or interpret the FDCA." J.A. 631. The FDA further contended that the Commission should decline to institute an investigation based on principles of comity to the FDA. J.A. 629.
On October 27, 2017, the Commission issued its decision declining to institute an investigation and dismissing the complaint. J.A. 1-3. The Commission reasoned that Amarin's allegations are precluded by the FDCA. Id. ; see also POM Wonderful LLC v. Coca-Cola Co. , 573 U.S. 102, 109, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) ("Private parties may not bring [FDCA] enforcement suits." (citing 21 U.S.C. § 337 )).
In December 2017, Amarin filed in this court a petition for review and, separately, a petition for a writ of mandamus. We consolidated the two cases. Royal DSM NV, DSM Marine Lipids Peru S.A.C., DSM Nutritional Products LLC, and Pharmavite LLC (collectively, "DSM"); and Nordic Natural, Inc. and Nordic Pharma, Inc. (collectively, "Nordic") (both, "the Intervenors") intervened in the appeal. ECF Nos. 14, 23, 25, 49.
II
At the outset, we begin by confirming that we have jurisdiction to review the Commission's decision in this case. We then address Amarin's argument that the Commission has a mandatory, non-discretionary duty to institute an investigation when presented with a complaint under oath. Finally, we address whether the Commission correctly determined that Amarin's allegations are precluded by the FDCA.
A
Amarin contends that we have appellate jurisdiction under 28 U.S.C. § 1295(a)(6), but the Intervenors and the Commission disagree.
Our jurisdictional statute gives this court exclusive jurisdiction "to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 ( 19 U.S.C. [§] 1337 )." § 1295(a)(6). "Final determinations appealable under § 1295(a)(6) are specified in § 1337(c)...." Crucible Materials Corp. v. ITC , 127 F.3d 1057, 1060 (Fed. Cir. 1997).
The Intervenors and the Commission argue that the only "final determinations" subject to appellate review are those listed in § 1337(c). Intervenors' Br. 18-19; Commission's Br. 52-56. And these decisions, according to the Intervenors, can only be made "as a result of an investigation." Intervenors' Br. 19.
The question as to our jurisdiction in this case is resolved by our decision in Amgen Inc. v. ITC , 902 F.2d 1532 (Fed. Cir. 1990). In Amgen , the complainant alleged that a company violated § 337 by importing articles made by a patented process. See 19 U.S.C. § 1337(a)(1)(B)(ii). The *963 Commission instituted an investigation. Amgen , 902 F.2d at 1534. Ultimately, however, the Commission dismissed the complaint because the patent at issue did not contain a process claim, which the Commission considered to be a jurisdictional prerequisite for an investigation under § 1337(a)(1)(B)(ii). Id. at 1535.
On appeal in Amgen , we first addressed our jurisdiction under 28 U.S.C. § 1295(a)(6). Interpreting 19 U.S.C. § 1337(c), we recognized that § 1337(c)"has been interpreted as requiring a 'final determination decision on the merits , excluding or refusing to exclude articles from entry' under section 1337(d), (e), (f) or (g)." Id. (quoting Block v. ITC , 777 F.2d 1568, 1571 (Fed. Cir. 1985) ). But instead of adopting the rigid approach Intervenors argue for in this case, we concluded that the Commission's decision was "intrinsically a final determination, i.e., a determination on the merits ," thus making it appealable under § 1295(a)(6). Id. (emphasis in original).
In reaching that conclusion, we carefully explained the difference between our holding there and our earlier holding in Block , a case in which we held that a Commission order was not a final determination. In Block , the Commission initiated an investigation on its own motion. The Commission later terminated that investigation after the patent at issue was amended during reexamination. See id. As we explained in Amgen , "nothing in the termination Order [in Block ] prejudiced the Commission or any private party in a future proceeding." Id. Unlike in Block , however, the Commission order in Amgen "clearly reach[ed] the merits of [the] complaint and determinatively decide[d] [the complainant's] right to proceed in a section 1337 action." Id. We further explained that "any future action brought by [the complainant] would necessarily raise the same issue, and would presumably be dismissed for the same reason." Id. at 1536.
As in Amgen , the Commission's decision not to institute in this case is "intrinsically a final determination, i.e., a determination on the merits ." See id. at 1535 (emphasis in original). Here, the Commission declined to institute an investigation because the claims were precluded by the FDCA and, therefore, the complaint failed to state a cognizable claim under § 337. See J.A. 1-3. As in Amgen , this decision "clearly reach[ed] the merits of [the] complaint and determinatively decide[d] [Amarin's] right to proceed in a section 1337 action." See id. ; see also Import Motors, Ltd., Inc. v. ITC , 530 F.2d 940, 946-47 (CCPA 1976) (analyzing the right to appeal a Commission order by asking whether the order "has the operative effect of a 'final determination under subsection (d) or (e)' " and noting that "[s]ubstance, not form, must control"). Any future complaint brought by Amarin alleging these same facts "would necessarily raise the same issue" and "would presumably be dismissed for the same reason"-i.e., for lack of a private right of action to enforce the FDCA. See Amgen , 902 F.2d at 1536.[1] In other words, as discussed below, as long as *964 Amarin's complaint is based on proving violations of the FDCA (at least where the FDA has not provided guidance as to whether the articles violate the FDCA), Amarin's claims will be precluded. The Commission's decision is therefore intrinsically a final determination that effectively denies Amarin's request for relief under § 337(d) and (f).[2]
We are unpersuaded by the Intervenors' and the Commission's argument that a final determination can be made only after institution. See Intervenors' Br. 3; Commission's Br. 52. Although the decision in Amgen occurred after institution, the court's reasoning in that case was not based on that procedural detail. See Amgen , 902 F.2d at 1535. Instead, the court's analysis focused on the operative effect of the Commission decision. See id. ; Import Motors , 530 F.2d at 946-47 ("Substance, not form, must control.").
The dissent makes essentially the same argument, contending that a "final determination" can exist only after institution. Dissent at 970-71, 972, 974-75. But this approach elevates form over substance. The dissent's approach would require the Commission to formally institute an investigation-which requires publication of notice in the Federal Register-just long enough for the Commission to issue the same dismissal order it already issued in this case. There is no indication from the statutory text or context that Congress intended such rigid formality.
Because the Commission's decision is intrinsically a final determination on the merits that has the operative effect of denying Amarin's request for relief under § 337(d) and (f), the decision is a "final determination" under § 337(c). We therefore have jurisdiction to review that decision under 28 U.S.C. § 1295(a)(6).
Having found our jurisdiction proper, we need not address Amarin's alternative argument for jurisdiction-that we have authority to compel agency action under 5 U.S.C. § 706(1).[3]
B
We next address Amarin's argument that the Commission had a mandatory duty to institute an investigation in this case. Amarin contends that 19 U.S.C. § 1337(b)(1) imposes a non-discretionary duty on the Commission to institute an investigation when presented with a complaint under oath. See § 1337(b)(1) ("The *965 Commission shall investigate any alleged violation of this section on complaint under oath or upon its initiative.").
The relevant statutory scheme contemplates certain scenarios in which the Commission need not institute an investigation. See § 1337(b)(3) (stating, for example, that the Commission "may institute" under specified circumstances); see also § 1330(d)(5) (stating that an investigation shall occur if "one-half of the number of commissioners voting agree that the investigation should be made"). The Commission Rules also contemplate non-institution. Rule 210.10 provides that "[t]he Commission shall determine whether the complaint is properly filed and whether an investigation should be instituted on the basis of the complaint." 19 C.F.R. § 210.10(a)(1) (emphases added). That Rule further explains that "[i]f the Commission determines not to institute an investigation on the basis of the complaint, the complaint shall be dismissed." 19 C.F.R. § 210.10(c) ; see also 19 C.F.R. § 210.9(a) ("Upon receipt of a complaint alleging violation of section 337... [t]he Commission shall examine the complaint for sufficiency and compliance with the applicable sections of this chapter.").
The question remains, then, in what circumstances may the Commission decline to institute an investigation? Our precedent recognizes at least one such circumstance. See Syntex Agribusiness, Inc. v. ITC , 659 F.2d 1038 (CCPA 1981). In Syntex , our predecessor court held that the Commission was correct to dismiss a complaint without instituting an investigation where the complaint contained insufficient factual allegations to support a monopolization or conspiracy claim. Id. at 1044. The court framed the issue in that case as whether the complaint was a " 'complaint' within the meaning of section 337." Id. at 1041. Noting the absence of a definition of "complaint," the court recognized that a complaint must comply with then-Commission Rule 210.20, which set forth requirements for a complaint under § 337, including a requirement that the complaint include a statement of the facts constituting the alleged acts of monopolization and conspiracy. Id. at 1042.[4] The court explained that its disposition was based on the complaint's failure to comply with the requirements set forth in that Commission Rule.
Although Amarin appears to raise a broader argument regarding whether the Commission has discretion generally not to institute an investigation, we need not address that question here. Instead, we simply hold, consistent with Syntex , that the Commission may decline to institute an investigation where a complaint fails to state a cognizable claim under § 337.
The facts alleged as the basis for Amarin's complaint demonstrate that Amarin's allegations are based entirely on violations of the FDCA. As we explain below, claims based on such allegations are precluded by the FDCA, at least where the FDA has not yet provided guidance as to whether violations of the FDCA have occurred. Thus, under the facts of this case, where Amarin's complaint fails to state a cognizable claim for relief, the Commission did not err in its decision not to institute.
C
We next address the Commission's holding that Amarin's complaint "does not allege an unfair method of competition or unfair act cognizable under 19 U.S.C. § 1337(a)(1)(A), as required by the statute *966 and the Commission's rules." J.A. 1. The Commission explained that "the Lanham Act allegations in this case are precluded by the Food, Drug and Cosmetic Act," and that "the Food and Drug Administration is charged with the administration of the FDCA." J.A. 1. As explained below, we agree.
As relevant here, the FDCA authorizes the FDA to regulate drugs and dietary supplements. Introducing a "new drug," 21 U.S.C. § 321(p), into interstate commerce requires FDA approval, id. § 355(a). Dietary supplements, however, do not require pre-market approval.
The FDCA provides the United States with "nearly exclusive enforcement authority." POM Wonderful LLC v. Coca-Cola Co. , 573 U.S. 102, 109, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) ; see also 21 U.S.C. § 337(a) ("Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."); Buckman Co. v. Plaintiffs' Legal Comm. , 531 U.S. 341, 349 n.4, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions...."). Private parties may not bring suits to enforce the FDCA. POM Wonderful , 573 U.S. at 109, 134 S.Ct. 2228 (citing 21 U.S.C. § 337 ).
Given the lack of a private right to enforce the FDCA, other circuit courts have grappled with the extent to which private parties' claims under § 43(a) of the Lanham Act are limited by the FDCA. See PhotoMedex, Inc. v. Irwin , 601 F.3d 919 (9th Cir. 2010) ; Alpharma, Inc. v. Pennfield Oil Co. , 411 F.3d 934 (8th Cir. 2005) ; cf. Sandoz Pharm. Corp. v. Richardson-Vicks, Inc. , 902 F.2d 222 (3d Cir. 1990).
For example, in PhotoMedex , the Ninth Circuit affirmed a grant of summary judgment in favor of a defendant as to a Lanham Act false advertising claim based on allegations that the defendant misrepresented that its product had received FDA clearance. 601 F.3d at 922. That case involved the FDCA's 510(k) clearance process, and the court focused heavily on the details of that statutory scheme in reaching its holding. In short, the defendant had received 510(k) clearance for its earlier device, but the plaintiff argued that based on significant changes to the device, the defendant should have made a new 510(k) submission to obtain market clearance for the updated product. Id. at 926. In reaching its conclusion, the court emphasized that "[i]t is significant that under the regulatory structure established by the FDA for the medical devices at issue in this case, clearance to market a given device did not necessarily require an affirmative statement of approval by the FDA." Id. Further, the court explained that even though the FDA had been aware of the alleged need for a new clearance, the FDA had never taken the position that the products had not been properly cleared. In sum, the court held that "[b]ecause the FDCA forbids private rights of action under that statute, a private action brought under the Lanham Act may not be pursued when, as here, the claim would require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation ." Id. at 924 (emphasis added).[5]
*967 The Eighth Circuit employed similar reasoning in Alpharma . 411 F.3d at 939-41. There, the district court granted a defendant's motion to dismiss a plaintiff's Lanham Act claim that was based on alleged misrepresentation of the uses for which a drug had been approved. Id. at 935-36. The Eighth Circuit reversed, reasoning that because the FDA had given guidance on the precise dispute between the parties, the plaintiff's claim in this particular case did not require a "preemptive determination" of how the FDA would interpret and enforce its own regulations. Id. at 940 ; see also PhotoMedex , 601 F.3d at 929 (summarizing Alpharma and noting that, there, "FDA explicitly made clear that it had not given the defendant's product the affirmative approval required for expanding its list of permissible uses" and thus "the plaintiff could bring a Lanham Act claim based on the defendant's false statements in its advertisement that the uses had been approved").
In its complaint, Amarin includes two separate bases for its § 337 claims. First, Amarin alleges that respondents' labeling or advertisements about the articles is false or misleading, in violation of § 43(a) of the Lanham Act, such that importation of those articles is an "unfair act" under § 337 of the Tariff Act. See J.A. 31-56 ¶¶ 53-105 (Compl.). This claim is based on the allegation that labeling the products as "dietary supplements" is literally false because the products "cannot meet the definition of 'dietary supplement' in Section 201(ff) of the FDCA." J.A. 33 ¶ 60 (Compl.). And, the claim is further based on the allegation that the products "are actually unapproved 'new drugs' under the FDCA." J.A. 47 (Compl.). Amarin's complaint relies on these alleged FDCA violations to support key elements of its Lanham Act false-advertising claim. See J.A. 55 ¶¶ 102-03 (applying these allegations to the elements of a false advertising claim). In other words, proving the Lanham Act claim in this case requires proving violations of the FDCA.
The second claim in Amarin's complaint alleges that the respondents' importation and sale of the products constitute unfair acts or unfair methods of competition under § 337 based on the standards set forth in the FDCA. J.A. 56 ¶ 106; see J.A. 56-59 (Compl.). For example, Amarin alleges that the products are "misbranded drugs in violation of the standards set forth in Section 502 of the FDCA, [ 21 U.S.C.] § 352, and adulterated drugs, in violation of Section 501 of the FDCA, id. § 351." J.A. 57 ¶ 107. Every allegation supporting this claim rests on an alleged violation of the FDCA.
In sum, Amarin's two § 337 claims are based on the same factual allegations-that respondents' products do not meet the definition of "dietary supplement" in the FDCA, see 21 U.S.C. § 321(ff), and are instead unapproved "new drugs" under the FDCA. E.g. , J.A. 33-34 ¶¶ 60-61; J.A. 47-49 ¶¶ 84-87; J.A. 56 ¶ 106.
The case before us bears much resemblance to PhotoMedex , and we consider the Ninth Circuit's reasoning in that case persuasive. In our case, the alleged violations of § 337 are based entirely on-and could not exist without-the FDCA. Because private parties are prohibited from enforcing the FDCA, the same concerns expressed in PhotoMedex apply here. See PhotoMedex , 601 F.3d at 924. We note, however, that a major concern of the court in PhotoMedex was that proceeding with *968 the Lanham Act claim would "require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has not itself concluded that there was such a violation." Id. The court in PhotoMedex appears to have been concerned with adjudicating FDCA violations for the first time via a Lanham Act claim, rather than via the FDA. See id. ; id. at 928 (noting that the court's decision was consistent with other decisions "refusing to allow private actions under the Lanham Act premised on enforcement determinations that the FDA and other regulatory agencies did not themselves make " (emphasis added)); see also Alpharma , 411 F.3d at 935-37 ; Sandoz , 902 F.2d at 231 (noting that what the FDCA "do[es] not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of these Acts or their accompanying regulations").
As in PhotoMedex (and unlike in Alpharma ), affirmative FDA approval is not required in the dietary supplement context. Instead, manufacturers self-police. And as in PhotoMedex (and unlike in Alpharma ), the FDA has not provided guidance as to whether the products at issue in this case should be considered "new drugs" that require approval. Given this lack of guidance, we see no need to go further than the court in PhotoMedex did. We therefore hold that a complainant fails to state a cognizable claim under § 337 where that claim is based on proving violations of the FDCA and where the FDA has not taken the position that the articles at issue do, indeed, violate the FDCA. Such claims are precluded by the FDCA.
We note that this limited holding is consistent with the Commission's arguments in its briefing, which indicated that Amarin's claims are precluded at least until the FDA has provided guidance as to whether the products at issue are dietary supplements. See, e.g. , Commission's Br. 58 (suggesting that "Amarin is free to file a new complaint once the FDA issues sufficient guidance with respect to the accused products such that the Commission is not required to interpret the FDCA in the first instance and Amarin's claims are otherwise no longer precluded by the FDCA"). We also note that the United States, as amicus, appears to seek a broader ruling-that all such claims are precluded regardless of whether the FDA has provided guidance. As explained above, we need not address that broader question here, as the FDA has not provided guidance as to whether the products at issue properly qualify as "dietary supplements."
Despite Amarin's heavy reliance on POM Wonderful LLC v. Coca-Cola Co. , 573 U.S. 102, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014), that recent decision does not alter our analysis. There, the plaintiff sued a competitor under § 43 of the Lanham Act, alleging that the label on one of the defendant's products was deceptive and misleading. Id. at 106, 134 S.Ct. 2228. The product at issue was a juice blend sold with a label featuring the words "pomegranate blueberry" more prominently than the words "flavored blend of 5 juices." Id. at 106, 110, 134 S.Ct. 2228. Despite the prominence of the names of those two juices, the product actually contained just 0.3% pomegranate juice and 0.2% blueberry juice. Id. at 110, 134 S.Ct. 2228. The plaintiff alleged that this labeling (and other features) mislead consumers into thinking that the juice blend contained primarily pomegranate and blueberry juices. Id. The issue in the case was whether a private party could bring a Lanham Act claim challenging a food label as misleading, where that food label was regulated by the FDCA. The Ninth Circuit held that the plaintiff's Lanham Act claim was precluded by the FDCA, which forbids misbranding of food, including by misleading labeling.
*969 Id. The Supreme Court reversed, holding instead that the Lanham Act claim in that case was not precluded.
Amarin views POM Wonderful as rejecting the view that the FDCA precludes Lanham Act claims. But this reads POM Wonderful too broadly. Although POM Wonderful held that the FDCA does not categorically preclude a Lanham Act claim based on a product (e.g., a label) that is regulated by the FDCA, the court did not open the door to Lanham Act claims that are based on proving FDCA violations. The allegations underlying the Lanham Act claim in POM Wonderful did not require proving a violation of the FDCA itself. See id. at 117, 134 S.Ct. 2228 ("But POM seeks to enforce the Lanham Act, not the FDCA or its regulations."). This stands in stark contrast to the allegations in our case, which are based solely on alleged violations of the FDCA's requirements.
Amarin also relies on this court's decision in Allergan, Inc. v. Athena Cosmetics, Inc. , 738 F.3d 1350 (Fed. Cir. 2013). But Allergan was a pre-emption case-not a preclusion case. As the Supreme Court explained in POM Wonderful , "[i]n pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action." POM Wonderful , 573 U.S. at 111, 134 S.Ct. 2228. Meanwhile, in cases where a cause of action under one federal statute is alleged to be precluded by the provisions of another federal statute, "the state-federal balance does not frame the inquiry," and the " 'presumption against pre-emption' has no force." Id. (internal citation omitted). In Allergan , we simply held that the FDCA did not preempt certain state law claims based on violations of state law requirements that paralleled FDCA requirements. Allergan , 738 F.3d at 1354-56. That analysis has no bearing on this case.
In short, although Amarin presents its claims as violations of the Tariff Act, in reality those claims constitute an attempt to enforce requirements of the FDCA through the remedies provided under the Tariff Act. Because private parties have no such enforcement authority, Amarin's allegations fail to state a cognizable claim for relief.[6]
III
For the foregoing reasons, we hold that we have appellate jurisdiction to review the Commission's decision not to institute an investigation in this case. Exercising that jurisdiction, we hold that the Commission correctly held that Amarin's complaint fails to present a cognizable claim under § 337. The decision is therefore affirmed and the petition for mandamus is denied as moot.
AFFIRMED

The Commission's decision to dismiss the complaint presented a pure question of law regarding FDCA preclusion. Based on that holding, Amarin was in no way free to file another complaint on the same grounds, as the dissent suggests. See Dissent at 975. Our recognition of the possibility that Amarin's complaint may not be precluded in the future, under a different set of facts (i.e., where FDA has provided guidance as to whether these particular articles violate the FDCA) does not make the Commission's determination "without prejudice." Indeed, that future possibility would not have existed but for our ability to review and narrow the Commission's even broader preclusion holding through this appeal.

The dissent's attempt to characterize the Commission's decision in this case as an order under § 1337(b), rather than as effectively being an order under § 1337(d) or (e), cannot be reconciled with Amgen . Amgen also did not involve a formal order under § 1337(d), (e), (f), or (g). Regardless, and as the dissent recognizes, see Dissent at 974-75, we held in Amgen that the substance of the Commission's analysis meant that it "should have dismissed on the merits." 902 F.2d at 1536. But a dismissal on the merits would still not produce a formal order under § 1337(d), (e), (f), or (g). Instead, as our predecessor court emphasized in Import Motors , what matters is that the order "ha[s] the same operative effect, ... as a final determination under subsections (d) and (e). Substance, not form, must control." 530 F.2d at 945-46.

It is unclear whether Amarin is also arguing that we may review the decision via mandamus aside from § 706(1). Indeed, Amarin states that "[t]he judicial review provisions of the Administrative Procedure Act have effectively displaced the need for courts to issue writs of mandamus when asked to review agency decisions." Appellant's Br. 26 (emphasis added). Regardless, to the extent Amarin contends that some other basis for mandamus review is warranted, Amarin has failed to explain how it would satisfy the traditional mandamus requirements. See Cheney v. U.S. Dist. Court for D.C. , 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (listing the three requirements that must be satisfied before a writ may issue).

The Commission Rule at issue in Syntex has since been re-codified as Commission Rule 210.12.

The court limited its holding, reasoning that "we do not suggest that the Lanham Act can never support private party claims involving FDA approval or clearance of drugs or medical devices." Id. at 924. Giving an example, the court stated that if "it was clear that an affirmative statement of approval by the FDA was required before a given product could be marketed and that no such FDA approval had been granted, a Lanham Act claim could be pursued for injuries suffered by a competitor as a result of a false assertion that approval had been granted." Id. at 924-25.

Although the Intervenors argue that the Commission should receive Chevron deference for its interpretation of § 337 with respect to the preclusion issue in this case, see Intervenors' Br. 54-68, the Commission does not. The United States, as amicus, also does not argue in favor of Chevron deference.