**REFRACTARIOS MONTERREY, S. A., Appellant,**

v.

**FERRO CORPORATION and U.S. International Trade Commission, Appellees.**

**Appeal No. 79–22.**

United States Court of Customs and Patent Appeals.

Oct. 11, 1979.

Before MARKEY, Chief Judge, and RICH, BALDWIN and MILLER, Judges.

BALDWIN, Judge.

This matter comes before the court on motions to dismiss by appellee, Ferro Corporation ("Ferro"), and appellee, the U.S. International Trade Commission ("ITC" or "Commission").

These motions urge that the court lacks jurisdiction to hear this appeal. The appeal is from the Commission's refusal to review the Administrative Law Judge's order that certain evidentiary matters in Investigation 337–TA–41 are to remain confidential under a protective order, i. e., denying appellant's Motion to Declassify. The investigation itself was terminated upon statutory disclaimer of all patent claims in suit by Ferro, the complainant below. The com-

plaint instigating the action before the ITC alleged, *inter alia*, that certain imported articles infringed a valid U.S. patent owned by Ferro.

## Proceedings Below

On the basis of a complaint filed by Ferro pursuant to 19 U.S.C. § 1337,[1] the ITC instituted, on February 3, 1978, an investigation of alleged unfair methods of competition and unfair acts in the importation into or sale in the United States of certain ceramic tile setters. Tile setters are relatively simple box-shaped devices used to support flat ceramic tiles during firing in a kiln. The Commission's Notice of Investi-

1. The pertinent portions of 19 U.S.C. § 1337 provide:

§ 1337. Unfair practices in import trade— Unfair methods of competition declared unlawful

(a) Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.

Investigation of violations by Commission; time limits

(b)(1) The Commission shall investigate any alleged violation of this section on complaint under oath or upon its initiative. Upon commencing any such investigation, the Commission shall publish notice thereof in the Federal Register. The Commission shall conclude any such investigation, and make its determination under this section, at the earliest practicable time, but not later than one year (18 months in more complicated cases) after the date of publication of notice of such investigation. The Commission shall publish in the Federal Register its reasons for designating any investigation as a more complicated investigation. For purposes of the one-year and 18-month periods prescribed by this subsection, there shall be excluded any period of time during which such investigation is suspended because of proceedings in a court or agency of the United States involving similar questions concerning the subject matter of such investigation.

\* \* \* \* \* \*

Determinations; review

(c) The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section. Each determination under subsection (d) or (e) of this section shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of Title 5. All legal and equitable defenses may be presented in all cases. Any person adversely affected by a final determination of the Com-

mission under subsection (d) or (e) of this section may appeal such determination to the United States Court of Customs and Patent Appeals. Such court shall have jurisdiction to review such determination in the same manner and subject to the same limitations and conditions as in the case of appeals from decisions of the United States Customs Court.

Exclusion of articles from entry

(d) If the Commission determines, as a result of an investigation under this section, that there is violation of this section, it shall direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry.

Exclusion of articles from entry during investigation except under bond

(e) If, during the course of an investigation under this section, the Commission determines that there is reason to believe that there is a violation of this section, it may direct that the articles concerned, imported by any person with respect to whom there is reason to believe that such person is violating this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry, except that such articles shall be entitled to entry under bond determined by the Commission and prescribed by the Secretary.

gation[2] stated that an investigation was being instituted to determine whether there was a violation of § 1337 in the unauthorized importation of certain ceramic tile setters into the United States, or in their subsequent sale, by reason of:

(1) the alleged coverage of such tile setters by claims 1, 4, 6, 7 and 8 of U.S. Letters Patent 3,169,295,

(2) the alleged unfair use of complainant Ferro's trade secrets and know-how,

(3) the alleged charging of discriminatory and/or unfairly low prices for such tile setters with the intent to destroy or injure competition,

(4) an alleged conspiracy to charge discriminatory and/or unfairly low prices for such tile setters,

(5) an alleged attempt and intent to monopolize the U.S. market for such tile setters, and

(6) an alleged conspiracy to monopolize the U.S. market for such tile setters,

the effect or tendency of which unfair acts or methods of competition was to destroy or substantially injure an efficiently and economically operated U.S. industry or to restrain or monopolize trade and commerce in the United States.

On May 23, 1978, the Administrative Law Judge, in an Order for Prehearing Statements, directed the parties to submit statements of the issues to be considered at the hearing. Any contentions not set forth in detail were to be deemed abandoned, uncontroverted or withdrawn. Ferro's prehearing statement omitted any reference to the alleged anticompetitive acts (2) through (6), thus effectively removing those alleged acts from consideration.

Thereafter on June 15, 1978, Ferro filed with the U.S. Patent and Trademark Office (PTO) a disclaimer under 35 U.S.C. § 253[3] disclaiming claims 1, 4, 6, 7 and 8 of the patent in question.[4] Patent infringement was therefore removed as an issue in the investigation.

Accordingly, on September 11, 1978, the Commission terminated its investigation based on a finding that none of the six unfair acts or unfair methods of competition found in the notice of investigation remained to be adjudicated.

However, about a month prior to the termination of the investigation, Refractarios Monterrey, S.A. (appellant here, respondent below) and its co-respondent, Dallas Ceramic Tile Co., filed a motion with the presiding Commission Administrative Law Judge seeking the declassification of certain depositions and related exhibits. During the discovery period, these materials had been classified as confidential commercial information subject to a protective order.[5] After agreement between the parties that some material would be declassified, appellant filed a motion seeking the declassification of additional documents.

---

**2.** Published at 43 Fed.Reg. 5901 (February 10, 1978).

**3.** 35 U.S.C. § 253 provides:

Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him.

In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

**4.** Ferro indicates in its Motion to Dismiss that "through inadvertence, some of its own tile setters, designed for a different purpose, may have been encompassed" by the noted claims. Ferro further states that "[u]pon such discovery, Ferro filed a formal disclaimer of all * * * claims involved in the ITC investigation, and promptly filed a reissue application on June 7, 1978, for narrower claims, in the United States Patent and Trademark Office, which application is still pending."

**5.** Issuance of protective orders is authorized by 19 C.F.R. 210.30(d). Under the terms of the protective order in this investigation, the confidential information could be disclosed only to designated persons and then solely for the purposes of the investigation.

On September 27, 1978 (after the termination of the investigation), the Administrative Law Judge issued an order denying appellant's motion to declassify. On October 6, 1978, appellant filed a motion for reconsideration which was subsequently denied on January 12, 1979. Appellant then filed, with the Commission's Secretary, a paper denominated "Appeal of Order of Presiding Officer Denying Motion to Declassify." The Commission informed appellant of its decision "not to review the presiding officer's order * * * denying [the] motion to declassify" on March 6, 1979. This letter additionally took note of appellant's right to seek release of the materials in dispute under the Freedom of Information Act. On March 23, 1979, appellant filed a "Petition for Reconsideration" of the Commission's decision not to review the Administrative Law Judge's order. The Commission again declined to review the order. The appeal to this court was filed on May 10, 1979, and seeks only review of the Commission's refusal to review the order denying declassification. No review is sought of the Commission's order terminating the investigation.

### Ferro's Motion to Dismiss

Ferro mounts a two-pronged argument in its Motion. First, Ferro observes that § 1337(c) provides that any person adversely affected by a *final* determination of the Commission under § 1337(d) or (e), may appeal such a determination to this court.

Inasmuch as the Commission did not make a determination, as a result of an investigation, that there has, or has not, been a violation and the imported article should, or should not, be excluded from entry into the United States (§ 1337(d)) and since the Commission did not make a determination that certain articles may be entitled to entry under a bond (§ 1337(e)), Ferro contends that appellant is without standing to bring the appeal and this court is without subject matter jurisdiction to hear the appeal.[6]

Ferro additionally argues that even if appellant had a right to an appellate review in this court, it nonetheless failed to file a notice of appeal within the allotted time period. Under the rules of this court,[7] Rule 4 of the Federal Rules of Appellate Procedure [8] provides sixty days in which to file a notice of appeal and such time is to be computed from the time of entry of the judgment or order appealed from. Ferro maintains that such "time of entry" occurred upon the occasion of the Administrative Law Judge's denial of the appellant's

---

6. Ferro cites *Import Motors, Inc. v. International Trade Commission*, 530 F.2d 937, 188 USPQ 491 (CCPA 1975) and *Rohm and Haas Company v. International Trade Commission*, 554 F.2d 462, 193 USPQ 693 (CCPA 1977) as support for this argument.

7. Rule 1.4(a) of this court states: "The Federal Rules of Appellate Procedure shall govern any practice or procedure not specifically covered by these rules."

8. Rule 4(a) (amended subsequent to the filing of this appeal) of the FRAP provides in pertinent part:

(a) *Appeals in Civil Cases.* In a civil case (including a civil action which involves an admiralty or maritime claim and a proceeding in bankruptcy or a controversy arising therein) in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days of the date of the entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days of such entry. * * *

The running of the time for filing a notice of appeal is terminated as to all parties by a timely motion filed in the district court by any party pursuant to the Federal Rules of Civil Procedure hereafter enumerated in this sentence, and the full time for appeal fixed by this subdivision commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: (1) granting or denying a motion for judgment under Rule 50(b); (2) granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) granting or denying a motion under Rule 59 to alter or amend the judgment; (4) denying a motion for a new trial under Rule 59. A judgment or order is entered within the meaning of this subdivision when it is entered in the civil docket.

motion for reconsideration of the order denying the earlier motion to declassify rather than the subsequent denials by the whole Commission.

### ITC's Motion to Dismiss

The ITC also filed a Motion to Dismiss arguing that the court lacks subject matter jurisdiction in this appeal. It notes that Congress has specifically provided for appellate review under § 1337(c) only of "final determinations" under subsections (d) and (e) and impliedly under subsection (f).[9] Accordingly, it is argued, this court does not review "disputes of a collateral or interlocutory nature."[10]

The ITC asserts that the Administrative Procedure Act (APA) similarly does not confer jurisdiction on this court over the issue in controversy in that § 1337(c) incorporates only subchapter II, chapter 5, title 5 of the United States Code. That subchapter concerns only procedures internal to an agency. The judicial review provisions of the APA are contained in another non-included chapter, namely, chapter 7. In any event, the ITC argues that the Supreme Court has clearly stated that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action" in *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), so that even if this court had jurisdiction *under the APA* to hear an appeal regarding the final determination, it would not necessarily have the authority to hear petitions on interlocutory matters or other matters unrelated to that

final determination absent a separate statutory grant.

The Commission maintains that the proper method of attaining Commission review of the Administrative Law Judge's denial of appellant's declassification petition is under the Freedom of Information Act (FOIA) (5 U.S.C. § 552) and the *Rules of Practice and Procedure* before the Commission (19 C.F.R. 201 *et seq.*). It notes that appellant's request will be granted if the documents it seeks are not business confidential information within the meaning of 5 U.S.C. § 552(b)(4).[11]

### Appellant's Arguments

Appellant contends that the notice of appeal was timely filed in this matter. It is said that the 60 day period for appeal begins only after pursuit of all administrative remedies available to the appellant have been exhausted. Appellant argues that the Commission's rules (19 C.F.R. 210.56–60) provide for an appeal to the full Commission from the denial by the Administrative Law Judge to declassify the documents in issue.[12]

Appellant then reasons that the appeal need be filed only after the final refusal by the whole Commission to review the holding of the Administrative Law Judge.

Appellant additionally contends that § 1337(c), by incorporating subchapter II of chapter 5 of the APA, allows a review under the APA of the hearing and the record by this court. Therefore, it is argued, since the APA provides that any "person suffering legal wrong because of agency action * * * is entitled to judi-

---

**9.** See *Import Motors v. I. T. C.*, supra.

**10.** We presume that the ITC means to argue that the court does not consider matters that are *only* collateral or completely unrelated to the final determination of the Commission. In an appeal, some review of material which may be ancillary to the final determination is necessary.

**11.** 5 U.S.C. § 552(b)(4) provides, in essence, that an agency need not make available to the public information that consists of "trade se-

crets and commercial or financial information obtained from a person and privileged or confidential."

**12.** Neither the Commission nor Ferro appears to agree that such an administrative avenue is open to appellant under the rules and, indeed, we are unable to verify the existence of such remedy by careful consideration of those rules. Nonetheless, the protective order itself may well provide for such a procedure. (*See* ftn. 14, infra.)

cial relief thereof," this court is to grant such relief.[13]

Lastly, appellant argues that the FOIA is not appropriate in this case since the Protective Order itself (paragraph 13)[14] provided for an appeal from any ruling of the Commission.

## OPINION

 Section 1337(c) does not provide *this* court with the authority to review rulings and determinations of the ITC *under the APA* (see footnote 13, supra). Section 1337(c) does, however, grant this court the statutory authority to review "final determination(s)" made under § 1337(d), (e) and (f),[15] and other associated matters necessary for the proper consideration of those "final determinations."[16]

Without expressing any opinion on other points raised, this case may be disposed of on the basis of but a single question:

Whether or not the matter in this appeal, i. e., the Commission's action concerning the Administrative Law Judge's refusal to declassify, is now or ever will be related to a "final determination" under the pertinent statute.

 We note that the ITC terminated the investigation and dismissed the case against appellant—actions not challenged by appellant. It seems apparent that there is no "final determination" in this case within the meaning of the statute, nor will there ever be. The Commission will not, in this case, now direct that the tile setters be excluded or not excluded from entry into the United States. The Commission dismissed the action.

 The keystone of our subject-matter jurisdiction in this case is simply missing.

**13.** We note that § 1337(c) incorporates *only* the provisions of subchapter II of chapter 5 of title 5 of the U.S. Code. The portion argued by appellant having to do with judicial review is in another chapter of the APA.

**14.** Paragraphs 8, 10 and 13 of the Protective Order provide:

8. The Commission, its designated presiding officer, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a challenge by any party pursuant to paragraph 10 below or to a final ruling, after notice, by the Commission, its designated presiding officer, or its Freedom of Information Act Officer to the contrary, or by appeal of such a ruling, interlocutory or otherwise.

10. If a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2, disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order. If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation, such supplier shall express the withdrawal, in writ-

ing, and serve such withdrawal upon all parties and the Commission, its designated presiding officer, and the Commission investigative attorney. If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information, within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Commission or its designated presiding officer who shall consider the issue.

13. Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or its designated presiding officer concerning the issue of the status of confidential business information.

**15.** A dismissal in an ITC proceeding without a finding is not a "final determination." See *Import Motors v. ITC*, supra 530 F.2d at 944, 188 USPQ at 494.

**16.** Obviously the "All Writs Act" (28 U.S.C. § 1651(a)) allows the court to issue writs necessary to preserve an issue in a lower tribunal for subsequent appeal *if* the court would have subject-matter jurisdiction over the issue in the first instance. See *Godfredsen v. Banner*, 598 F.2d 589, 202 USPQ 7 (CCPA 1979).

Without a "final determination," or even the possibility of one ever existing, this court is without authority to review the matters in question.

Accordingly, the appeal is *dismissed.*[17]

*DISMISSED.*

17. Appellant's motion to extend the time for filing the transcript is therefore moot.