# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued February 23, 2010    Decided July 16, 2010

No. 09-1155

MICEI INTERNATIONAL,
APPELLANT

v.

DEPARTMENT OF COMMERCE,
APPELLEE

————

Consolidated with 09-1186

————

Appeals of an Order
of the United States Department of Commerce

————

*Robert Clifton Burns* argued the cause for appellant. With him on the briefs was *Daniel T. O'Connor*. *Daniel I. Prywes* entered an appearance.

*Anisha S. Dasgupta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Mark B. Stern*, Attorney. *Samantha L. Chaifetz*, Attorney, entered an appearance.

Before: GINSBURG and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The Department of Commerce sanctioned Micei International for alleged violations of export regulations. Per the agency's instruction, Micei sought judicial review directly in this court. We hold that jurisdiction lies in the district court and transfer the matter there.

## I.

The Department of Commerce promulgated regulations ("export regulations") to implement the Export Administration Act of 1979 (EAA), 50 U.S.C. app. §§ 2401–2420 (2006). *See* 15 C.F.R. § 730.2 (2009). Designed to regulate the export of dual-use items (goods with both commercial and military applications), *see* 50 U.S.C. app § 2402(2), the EAA has lapsed, as happens periodically because it is a temporary statute with a set expiration date, *see id.* § 2419; Pub. L. No. 96-72, § 20, 93 Stat. 503, 535 (1979).

On many occasions, Congress has reauthorized the EAA by simply postponing its expiration date, *see, e.g.*, Pub. L. No. 98-108, § 1, 97 Stat. 744, 744 (1983), but it does not always do so prior to the Act's termination. As a result, there have been periods of lapse, ranging in length from a few days to many years, between the statute's episodic expiration and revival. *See Wisc. Project on Nuclear Arms Control v. U.S. Dep't of Commerce*, 317 F.3d 275, 278 (D.C. Cir. 2003). Most recently, the EAA expired on August 20, 2001. 50 U.S.C. app § 2419. Congress has not yet reenacted it.

On August 17, 2001, the President issued an executive order directing the Department of Commerce to enforce the

export regulations upon the EAA's expiration as if they were "in full force and effect." Exec. Order No. 13,222, § 2, 3 C.F.R. 783, 784 (2002). The President issued the order under the aegis of the International Emergency Economic Powers Act (IEEPA), which provides, inter alia, that the President may regulate certain export transactions in the instance of a qualifying national emergency, *see* 50 U.S.C. §§ 1701, 1702(a)(1)(B). The President found such an emergency in the expiration of the EAA and the resulting absence of an operative export control law. Exec. Order No. 13,222, 3 C.F.R. at 783–84. As we have noted before, the use of IEEPA to maintain the export regulations reflects a longstanding practice consistent with congressional expectations. *See Wisc. Project*, 317 F.3d at 278–79, 283.

## II.

In 2008, the Department of Commerce charged Micei International, a Macedonian sporting goods and military supply company, with violating the export regulations in a series of transactions that took place in 2003. In the ensuing administrative enforcement proceeding, the Department entered a default judgment against Micei, resulting in a fine of $126,000 and a five-year suspension of export privileges. *In the matter of: Micei Int'l, Resp't*, 74 Fed. Reg. 24,788, 24,790 (Dep't of Commerce May 26, 2009) (final decision).

Commerce informed Micei that it had two avenues for appeal. Within a year, Micei could petition the agency to vacate the default judgment. *Id.* at 24,796 (citing 15 C.F.R. § 766.7(b)). Micei could also appeal the order "within 15 days to the United States Court of Appeals for the District of Columbia [Circuit] pursuant to 50 U.S.C. app § 2412(c)(3)." *In the matter of: Micei Int'l, Resp't*, 74 Fed. Reg. at 24,796 (quoting 15 C.F.R. § 766.22(e)). The statute referenced is the

judicial review provision of the expired EAA, which provided that this court "shall have jurisdiction" over challenges to civil penalties imposed under the Act. 50 U.S.C. app. § 2412(c)(3).

Micei initially pursued both routes, filing a motion to vacate the judgment with the Department on May 19, 2009, and a notice of appeal in this court on May 28. Micei shortly thereafter withdrew its motion to vacate. "Out of an abundance of caution," Br. of Pet'r at 2 n.2, Micei supplemented its direct appeal to this court with a petition for review filed on June 29. We consolidated the May 28 and June 29 filings, both of which challenge the default judgment and resulting sanctions.

### III.

Federal courts are courts of limited subject-matter jurisdiction and "every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction, . . . even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotation marks omitted).

"[T]wo things are necessary to create jurisdiction" in an Article III tribunal other than the Supreme Court. *Mayor v. Cooper*, 73 U.S. (6 Wall.) 247, 252 (1868). "The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it*." *Id.* (emphasis added). Without statutory authorization, the "inferior Courts" neither exist nor have jurisdiction to wield "the judicial Power of the United States." U.S. CONST. art. III, § 1; *see, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (stating the "bedrock principle that federal courts have no jurisdiction without statutory authorization").

"It is axiomatic that Congress, acting within its constitutional powers, may freely choose the court in which

judicial review of agency decisions may occur." *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988) (internal quotation marks and brackets omitted). "[T]he 'normal default rule' is that 'persons seeking review of agency action go first to district court rather than to a court of appeals.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994)). "[O]nly when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action" may a party seek initial review in an appellate court. *Watts*, 482 F.3d at 505.

The requisite direct-review provision must appear "in the statute pursuant to which the agency action is taken, or in another statute applicable to it." *Five Flags*, 854 F.2d at 1439. With the EAA in lapse, IEEPA "provides the statutory authority for the continued enforcement of the EAA's export restrictions." *United States v. Hitt*, 249 F.3d 1010, 1024 n.14 (D.C. Cir. 2001); *accord United States v. Mechanic*, 809 F.2d 1111, 1113 (5th Cir. 1987). IEEPA is silent regarding the availability of and forum for judicial review of action taken under its auspices. The Administrative Procedure Act (APA), though, authorizes judicial review of final agency action. *See* 5 U.S.C. § 704. This authorization is inapplicable if another statute provides for judicial review or precludes application of the APA's judicial review provisions, or where the action challenged is committed to agency discretion by law, *see id.* §§ 701(a), 704, but the Department of Commerce does not contend that any of these exceptions apply here. Thus, judicial review is available to Micei pursuant to the APA. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (reviewing agency action taken pursuant to IEEPA under the APA); *see also* Br. of Resp't at 2; Resp't Mot. to Transfer the Proceedings at 5. Unless a statute channels review directly to the court of appeals, however, Micei's

challenge properly belongs in the district court under the "normal default rule" of district court review. *Pena*, 17 F.3d at 1481; *see Bell v. New Jersey*, 461 U.S. 773, 777 & n.3 (1983) (explaining that in the absence of a provision authorizing review in the court of appeals, challenges to agency action to which the APA's judicial review provisions apply fall within the district court's federal question jurisdiction under 28 U.S.C. § 1331).

In its brief, the Department of Commerce identified § 704 of the APA as the statutory basis for direct-review jurisdiction in this court. Br. for Resp't at 1–2. This contention is surprising (and wrong, too). It is well established that § 704 "is not a jurisdiction-conferring statute," *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006), and, in any event, § 704 makes no reference to the court of appeals.

Micei's brief pointed to the provision of the EAA granting this court jurisdiction to hear direct appeals of export sanctions as the necessary direct-review statute. Br. of Pet'r at 1 (citing 50 U.S.C. app. § 2412(c)(3)). But that provision expired with the rest of the EAA, *see* 50 U.S.C. app. § 2419, extinguishing the jurisdiction the EAA had granted, for the ordinary rule is that when a jurisdiction-conferring statute expires, our "jurisdiction ceases," *McNulty v. Batty*, 51 U.S. (10 How.) 72, 79 (1850); *cf. Bruner v. United States*, 343 U.S. 112, 116–17 (1952) ("This rule—that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court.").

This is not a case in which the general savings statute provides an exception to this rule. *See* 1 U.S.C. § 109. Under the general savings statute, a temporary enactment that has expired and does not provide otherwise is "treated as still

remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement" of "any penalty, forfeiture, or liability incurred under such statute." *Id.* This provision can perpetuate the jurisdiction granted in a statute beyond its expiration, *see De La Rama S.S. Co. v. United States*, 344 U.S. 386, 389–91 (1953), but only if the liability that is the subject of the suit for which jurisdiction is sought was "incurred under [the] statute," 1 U.S.C. § 109, meaning while the statute was in effect, *see Allen v. Grand Cent. Aircraft Co.*, 347 U.S. 535, 554–55 (1954) ("The precise object of the general savings statute is to prevent the expiration of a temporary statute from cutting off appropriate measures to enforce the expired statute in relation to violations of it, or of regulations issued under it, *occurring before its expiration*." (emphasis added)); *see also Iran Air v. Kugelman*, 996 F.2d 1253, 1257 (D.C. Cir. 1993). Here, Micei's alleged violations occurred in 2003, well *after* the EAA's expiration. The general savings statute saves nothing in this case.

Doubtful of our jurisdiction, we ordered the parties to address the issue at oral argument. In that colloquy, neither side offered an alternative statutory basis for our jurisdiction. However, the Department of Commerce indicated that, at least until the court requested that the parties address jurisdiction, it had been of the view that the executive order issued upon the EAA's expiration preserved the availability of judicial review in this court. *See* Oral Arg. Recording at 7:18–:28. The Department has now abandoned that view.

In a motion filed with the court on June 23, 2010, the Department of Commerce requested we transfer this matter to the United States District Court for the District of Columbia, urging us to conclude that that tribunal, and not this one, has initial jurisdiction over Micei's case. The Department explained that when the export regulations remain in effect via

executive order, they are authorized by IEEPA. Resp't Mot. to Transfer the Proceedings at 5. As such, jurisdiction for review of sanctions imposed for violating those regulations "must be determined by reference to the IEEPA's own jurisdictional provisions" and "because the IEEPA does not contain a direct review provision, review jurisdiction resides under current law as a first matter in federal district court." *Id.*

As is clear from our foregoing discussion, we agree with the Department's analytical approach. There remains, however, the question of what effect, if any, the executive order sustaining the export regulatory scheme has on this court's jurisdiction. In this litigation, the Department has not argued that the executive order purports to maintain the EAA in effect beyond the statute's expiration. *See* Resp't Mot. to Transfer the Proceedings at 3; Br. of Resp't at 6. The order can, however, be read to intend precisely that result. *See* Exec. Order No. 13,222, § 1, 3 C.F.R. at 784; *cf. Wisc. Project*, 317 F.3d at 279. Understood in this way, the executive order purports to prolong the useful life of the lapsed EAA, which would include perpetuating the jurisdiction conferred in that statute's direct-review provision, 50 U.S.C. app. § 2412(c)(3).

This court would have jurisdiction pursuant to the President's order only if the President has the authority to confer jurisdiction—an authority that, if it exists, must derive from either the Executive's inherent power under the Constitution or a permissible delegation of power from Congress. *See Am. Int'l Group, Inc. v. Islamic Republic of Iran*, 657 F.2d 430, 441–46 (D.C. Cir. 1981). The former is unavailing, as the Constitution vests the power to confer jurisdiction in Congress alone. *See, e.g.*, *Cary v. Curtis,* 44 U.S. (3 How.) 236, 245 (1845) ("[T]he judicial power of the United States . . . is . . . dependent for its distribution and organization, and for the modes of its exercise, entirely upon

the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court) for the exercise of the judicial power, and of investing them with jurisdiction . . . ."). Whether the executive order can provide the basis of our jurisdiction, then, turns on whether the President can confer jurisdiction on this court under the auspices of IEEPA.

We conclude that the President lacks that power. Nothing in the text of IEEPA delegates to the President the authority to grant jurisdiction to any federal court. Nowhere does the statute even refer to the jurisdiction of federal courts. It never mentions the direct-review provision of the expired EAA or, for that matter, the EAA itself. To be sure, "IEEPA delegates broad authority to the President." *Dames & Moore v. Regan*, 453 U.S. 654, 677 (1981). That authority includes the power to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit" a wide array of transactions, 50 U.S.C. § 1702(a)(1)(B), authority that might very well permit the President to maintain many of the substantive provisions of the export regulations and the EAA. But these powers do not include the power to vest jurisdiction in the federal courts. Because we reach this conclusion, we avoid whatever constitutional questions would arise were Congress to delegate such authority. *Cf. Loving v. United States*, 517 U.S. 748, 772 (1996) (explaining that delegations calling "for the exercise of judgment or discretion that lies beyond the traditional authority of the President" are more likely to violate the separation of powers).

The basis for the Department of Commerce's prior position that the President could, under the authority of IEEPA, confer jurisdiction on this court was our decision in *Wisconsin Project on Nuclear Arms Control v. U.S. Department of Commerce*, 317 F.3d 275. *See In the matter of: Micei Int'l, Resp't*, 74 Fed. Reg. at 24,790; Oral Arg. Recording at

7:20–:35. That case, as Commerce's counsel conceded, does not speak to the question of Article III jurisdiction. *See* Oral Arg. Recording at 7:36–8:39. The issue in *Wisconsin Project* was whether an expired provision of the EAA could provide the basis for the Department of Commerce to withhold certain export data under Exemption 3 of the Freedom of Information Act (FOIA), which permits agencies, in certain circumstances, to withhold records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Explaining that Exemption 3 requires asking whether "Congress has itself made the basic decision" to withhold disclosure, *Wisc. Project*, 317 F.3d at 280 (brackets omitted), we held that Congress's acquiescence in the President's use of IEEPA to maintain the export regulations evinced sufficient Congressional intent to enable the Department to invoke Exemption 3, *see id.* at 281–83. But in applying a particular FOIA exemption, we had no occasion to consider whether IEEPA purports to delegate to the President the authority to determine the jurisdiction of federal courts. *Wisconsin Project* does not control here.

In sum, the executive order extending the export regulatory regime does not confer direct-review jurisdiction upon this court. With the EAA in lapse and the general savings statute inapposite, no statute does either. Accordingly, we conclude that this court lacks jurisdiction over Micei's case. As the Department of Commerce now correctly concedes, the default rule of district court review applies to the challenge to export sanctions Micei brings here.

## IV.

At oral argument, Micei requested that in the event we concluded that it cannot obtain judicial review directly in this court, we transfer its case to the United States District Court for the District of Columbia. Oral Arg. Recording at 4:03–:28. The

Department of Commerce, by its motion, has joined in this request. This type of transfer is authorized under 28 U.S.C. § 1631, which provides that in the case of an action or appeal for which the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."

Transfer is appropriate here. As the Department of Commerce has recognized, Micei sought judicial review in this court in good-faith reliance on the Department's own instructions. Oral Arg. Recording at 10:27–:35; Resp't Mot. to Transfer the Proceedings at 6. Now, however, we have made clear that Micei's challenge properly belongs in the district court, where Micei could have brought a cause of action in lieu of the petition for review it filed here. *See Godwin v. Sec'y of Hous. & Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004). We therefore transfer Micei's petition for review, No. 09-1186, to the United States District Court for the District of Columbia.

Micei's appeal, however, was filed in accordance with the judicial review provision of the export regulations, 15 C.F.R. § 766.22(e) (2009), which directed parties to pursue an appeal as contemplated in the EAA's judicial review provision, 50 U.S.C. app. § 2412(c)(3). The Department of Commerce, responding to the jurisdictional issue raised in this case, recently deleted § 766.22(e) from the export regulations. *See Export Administration Regulations; Technical Amendments*, 75 Fed. Reg. 33,682, 33,683 (June 15, 2010). With this revision, we need not consider whether to transfer Micei's appeal to the district court, for neither the export regulations nor the Department of Commerce contemplate the need for this form of appeal while the EAA is in lapse. *See id.*; Resp't Mot. to Transfer the Proceedings at 5 ("[T]he availability of federal

court review must be determined by reference to the IEEPA's own jurisdictional provisions."). We therefore dismiss Micei's appeal, No. 09-1155, for lack of jurisdiction.

*So ordered.*