# United States Court of Appeals for the Federal Circuit

---

**REALTEK SEMICONDUCTOR CORPORATION,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**FUTURE LINK SYSTEMS, LLC,**
*Intervenor*

---

2023-1187

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1295.

---

Decided: June 18, 2025

---

THEODORE J. ANGELIS, K&L Gates LLP, Seattle, WA, argued for appellant.

CATHY CHEN, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by AMANDA PITCHER FISHEROW, SIDNEY A. ROSENZWEIG.

BRIAN DAVID LEDAHL, Russ August & Kabat, Los

Angeles, CA, argued for intervenor.  Also represented by
REZA MIRZAIE, ANDREW D. WEISS.

—————————

Before REYNA, BRYSON, and STOLL, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Realtek Semiconductor Corporation appeals from a de-
cision of the United States International Trade Commis-
sion in which the Commission adopted an administrative
law judge's order denying Realtek's motion for sanctions
against Future Link Systems, LLC.  We conclude that we
lack jurisdiction to hear Realtek's appeal and thus dismiss
the appeal.

I

In 2019, Future Link entered into a license agreement
with MediaTek, Inc., which is not a party to this litigation.
That agreement provided that MediaTek would pay Future
Link a lump sum amount if Future Link filed a lawsuit
against Realtek.  Subsequently, Future Link filed a com-
plaint before the International Trade Commission ("ITC"
or "Commission"), accusing Realtek of infringing certain
patents.  Early in the litigation, Future Link entered into
a settlement agreement with a third party.  Future Link
concluded that the settlement resolved the dispute under-
lying the investigation, and Future Link informed Realtek
of that agreement.  Realtek then filed a motion for sanc-
tions before the administrative law judge ("ALJ").  App.
528–31.

While expressing "alarm" at the license agreement be-
tween Future Link and MediaTek, and doubting its lawful-
ness, the ALJ nonetheless concluded that sanctions were
not warranted, in part because the evidence showed that
the agreement "played no role in Future Link's decision to
file the present Complaint." App. 12–13.  Shortly thereaf-
ter, Future Link withdrew its complaint against Realtek

and moved to terminate the investigation. That motion was granted, App. 3326–30, and when no petition for review of the ALJ's order terminating the investigation was filed, the Commission terminated the investigation, App. 3419–20. Realtek then petitioned the Commission for review of the ALJ's order denying the sanctions motion. App. 3426–57. The Commission declined to review the ALJ's order denying Realtek's request for sanctions and ruled that "[t]he sanctions proceeding is hereby terminated." App. 18–19.

Realtek filed an appeal to this court. Realtek does not seek relief from the order terminating the investigation, but instead seeks an order requiring Future Link to pay a fine to the Commission based on what Realtek regarded as the improper agreement between MediaTek and Future Link encouraging Future Link to file an action against Realtek.[1] Br. 28.

## II

## A

Realtek argues that the Commission and the ALJ violated the Administrative Procedure Act by rejecting Realtek's request for sanctions against Future Link. The ITC and Future Link, as an intervenor, take issue with Realtek's appeal on the merits, but they also argue that we lack jurisdiction to hear the appeal and that Realtek lacks standing to challenge the Commission's ruling on the sanctions issue. We agree that we lack jurisdiction. We

---

[1]    In its opening brief, Realtek also sought an order to declassify certain documents. In its reply brief, however, Realtek explicitly stated that it is no longer pursuing that remedy. Reply Br. 22. Because Realtek has withdrawn its request for declassification, we do not address that issue.

therefore do not reach the issue of standing, nor do we address the merits of Realtek's appeal.

Our jurisdiction to hear appeals from the ITC is governed by 28 U.S.C. § 1295(a)(6). That provision states:

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337).

19 U.S.C. § 1337(c) governs determinations and review. Pertinently, it states:

> Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5. Notwithstanding the foregoing provisions of this subsection, Commission determinations under subsections (d), (e), (f), and (g) with respect to its findings on the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the amount and nature of bond, or the appropriate remedy shall be reviewable in accordance with section 706 of title 5. Determinations by the Commission under subsections (e), (f), and (j) with respect to forfeiture of bonds and under subsection (h) with respect to the imposition of sanctions for abuse of discovery or abuse of process shall also be reviewable in accordance with section 706 of title 5.

The referenced subsection (h) governs sanctions. It reads: "The Commission may by rule prescribe sanctions for abuse of discovery and abuse of process to the extent authorized by Rule 11 and Rule 37 of the Federal Rules of Civil Procedure."

Realtek's first argument is that the Commission's sanctions decision was a "final determination" and that section 1295(a)(6) permits this court to hear appeals from every final determination identified in section 1337(c). Reply Br. 4–7. We disagree. Section 1295(a)(6) cannot be read alone, because it includes an express reference to section 1337. Specifically, section 1295(a)(6) permits us to hear only appeals from final determinations, as defined by section 1337(c). Therefore, we must look to how the term "final determination" is used in section 1337(c). We have held that a "final determination" for purposes of section 1337(c) means "a final administrative decision *on the merits*, excluding or refusing to exclude articles from entry under 19 U.S.C. § 1337(d), (e), (f), or (g) (1994)." *Crucible Materials Corp. v. U.S. Int'l Trade Comm'n*, 127 F.3d 1057, 1060 (Fed. Cir. 1997) (internal quotation marks omitted); *Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1571 (Fed. Cir. 1985) (quoting *Imp. Motors Ltd. v. U.S. Int'l Trade Comm'n*, 530 F.2d 940, 944 (CCPA 1976)); *Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 963–64 (Fed. Cir. 2019).

Realtek argues that the Commission's determination in this case was a final determination on the merits because the Commission ruled on the merits of Realtek's sanctions motion. That argument, however, misconstrues our case law. A final decision on the merits, as contemplated by sections 1295(a)(6) and 1337(c), is a decision that is tied to the entry of articles. In other words, the challenged decision must affect the exclusion or non-exclusion of articles from entry to qualify as a "final determination"

that is appealable to this court.[2] *See Seagate Tech., Inc. v. U.S. Int'l Trade Comm'n*, 36 F.3d 1113, 1994 WL 513329, at *3 (Fed. Cir. 1994).

The case that disposes of Realtek's argument is *Viscofan, S.A. v. U.S. International Trade Commission*, 787 F.2d 544 (Fed. Cir. 1986). In that case, the appellant asked this court to review a decision by the Commission regarding the declassification of certain materials. The court held that the Commission's decision on that issue was not within this court's jurisdiction because section 1295(a)(6) gave this court exclusive jurisdiction to review final determinations of the Commission "relating to unfair practices in import trade" made under section 1337, and Congress specifically defined final determinations to include those set forth in the first sentence of section 1337(c). Because the Commission's declassification order "would not and could not in any way affect the validity of the exclusion order," the court held that the appeal of that issue did not fall within the jurisdiction of this court. *Id.* at 552.

---

[2] To be clear, there are certain decisions that do not directly prohibit or allow the entry of articles but are nevertheless inherently final determinations, as contemplated by sections 1295(a)(6) and 1337(c). For example, in *Amarin Pharma*, we held that a decision not to institute an investigation was a final determination because it denied the complainant's request for the exclusion of articles from entry. 923 F.3d at 963–64. Similarly, in *Amgen Inc. v. U.S. International Trade Commission*, we held that a dismissal for lack of subject matter jurisdiction constituted a final determination to not exclude articles from entry. 902 F.2d 1532, 1535 (Fed. Cir. 1990). Decisions such as those constitute final determinations as contemplated by sections 1295(a)(6) and 1337(c), because they have the effect of conclusively denying the complainant's request to exclude particular items from entry.

In this case, Realtek seeks an order directing Future Link to pay a fine to the Commission. Br. 28. The entry of such an order, or the refusal to enter such an order, has no effect on the entry of any articles. Accordingly, it is not a final determination on the merits, as contemplated by our case law interpreting sections 1295(a)(6) and 1337(c).

## B

In arguing that this court has jurisdiction to review the Commission's order regarding sanctions, Realtek focuses on the use of the word "also" in section 1337(c) as providing the jurisdictional hook for this appeal. Section 1337(c) states that final determinations under subsections (d), (e), (f), or (g) are appealable directly "to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5." The statute adds that "[d]eterminations by the Commission . . . under subsection (h) with respect to the imposition of sanctions for abuse of discovery or abuse of process shall also be reviewable in accordance with section 706 of title 5." That use of the word "also," Realtek argues, must be understood to mean that because final determinations under subsections (d), (e), (f), and (g) are appealable to and reviewable in this court, determinations under subsection (h) must also be reviewable in this court.

The first problem with Realtek's argument is that the statute expressly lists which subsections give rise to final determinations that are appealable to this court, and subsection (h) is not included in that list. Congress's choice to set out the review provision for subsection (h) separately from the sentence in the statute that directs certain appeals to this court gives rise to an inference that Congress did not intend to add sanctions determinations that are not issued in connection with a final determination under subsections (d), (e), (f), or (g) to the scope of our jurisdiction.

That inference is supported by the way in which section 1337(c) has been amended over time. In 1974, Congress

amended section 1337(c) to provide for judicial review of final determinations under subsections (d) or (e) of section 1337 by the Court of Customs and Patent Appeals. Trade Act of 1974, Pub. L. No. 93-618, § 337(c), 88 Stat. 1978, 2054 (1975). Congress later expanded the list of such subsections to include subsection (f) of section 1337 (added in 1979, *see* Trade Agreements Act of 1979, Pub. L. No. 96-39, § 1105(c), 93 Stat. 144, 311), and subsection (g) (added in 1988, *see* Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1342(b)(2), 102 Stat. 1107, 1215). By 1988, judicial review of final determinations under that list of subsections had been assigned to this court, as the successor to the Court of Customs and Patent Appeals.

Notably, even though Congress added both subsection (g) and subsection (h) to the statute at the same time in 1988, *see id.* at 102 Stat. 1213–14, Congress included subsection (g), but not subsection (h), in the list of subsections for which appeals could be taken to this court. Then, in 1994, the statute was amended again to add the final sentence, which addresses review of determinations under subsection (h). But on that occasion, unlike in 1979 and 1988, the list of subsections giving rise to determinations that are appealable to this court was not amended to include the new subsection (h). Uruguay Round Agreements Act, Pub. L. No. 103-465, § 321(a)(2)(C), 108 Stat. 4809, 4943–44 (1994).

The second problem with Realtek's argument is that the references in section 1337(c) to review are in the context of the judicial review provisions of the Administrative Procedure Act (chapter 7 of title 5 generally and section 706 of title 5 in particular), which address the standard of review to be applied to appeals from Commission decisions but do not address which courts have jurisdiction over such appeals. Therefore, the statement in section 1337(c) that determinations under subsection (h) "shall also be reviewable in accordance with section 706 of title 5" plainly refers to the procedures to be applied on review, not the court to

which an appeal may be taken. That understanding is supported by the immediately preceding sentence, which states that determinations under subsections (d), (e), (f), and (g) with respect to certain issues "shall be reviewable in accordance with section 706 of title 5." Accordingly, the use of "also" in the final sentence refers back to the standard of review set forth in the proceeding sentence, not to the directive regarding appeals set forth in the first sentence.

The third problem with Realtek's argument is that the first sentence of section 1337(c), which addresses determinations under subsections (d), (e), (f), and (g), uses the term "appeal" to refer to the court to which an appeal may be taken, and the term "review" to refer to the standard of review to be applied. That is a common formulation found in numerous other statutes, which address the tribunal in which an appeal is to be taken separately from the standard of review to be applied on appeal.[3] Here, with respect to subsections (d), (e), (f), and (g), Congress addressed both reviewability and the tribunal to which appeals would be taken. But with respect to subsection (h), it addressed only the issue of reviewability. Therefore, the use of the word "also" must be understood to relate only to the reviewability of determinations under subsection (h), not to the forum in which such review may take place.

C

Importantly, because our jurisdiction extends to final determinations under subsections (d), (e), (f), and (g) of section 1337(c), our jurisdiction also necessarily includes "other associated matters necessary for the proper consideration of those 'final determinations.'" *Refractarios*

---

[3]    *E.g.*, 15 U.S.C. § 78u-6(f); 15 U.S.C. § 1262(e)(3); 15 U.S.C. § 1474(b); 31 U.S.C. § 5323(f)(2); 39 U.S.C. § 3663; 42 U.S.C. § 14922(c)(3); 49 U.S.C. § 30172(h).

*Monterrey, S.A. v. Ferro Corp.*, 606 F.2d 966, 970 n.10, 971 (CCPA 1979). Accordingly, we have found jurisdiction over matters that clearly affect or are directly related to the propriety of a final determination. *See, e.g.*, *Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1342 n.3 (Fed. Cir. 2019) (finding jurisdiction over an appeal from the denial of a consent order motion to terminate an investigation as part of a final determination; "[w]ith the jurisdiction to review the Commission's final determinations also comes the jurisdiction to review matters ancillary to or affecting the validity of those final determinations"); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1485 n.15 (Fed. Cir. 1986) (finding jurisdiction over a challenge to a confidentiality order when "the confidentiality problem was directly related to the propriety of the exclusion order"); *Amarin*, 923 F.3d at 963–64; *Amgen*, 902 F.2d at 1535.

Conversely, we have found no jurisdiction over matters that would not affect a final determination on the merits. *See, e.g.*, *Viscofan*, 787 F.2d at 552 (no jurisdiction over Commission's refusal to declassify certain confidential business information); *Duracell, Inc. v. U.S. Int'l Trade Comm'n*, 778 F.2d 1478, 15801 (Fed. Cir. 1985) (no jurisdiction over the President's decision disapproving the Commission's final determination because the President's decision was not "the foundation" for a reviewable final determination of the Commission); *Block*, 777 F.2d at 1571 (no jurisdiction over the decision to terminate an investigation without prejudice).

For example, orders requiring posting a bond and forfeiting a bond under subsections (e), (f), and (j) when the Commission's determination becomes final would be ancillary to the final determination under subsections (d), (e), (f), or (g), and therefore the appeal from such a forfeiture would be taken to this court. *See Biocraft Lab'ys, Inc. v. U.S. Int'l Trade Comm'n*, 947 F.2d 483 (Fed. Cir. 1991). Similarly, we would have jurisdiction over the imposition of sanctions (or the denial of sanctions) that was ancillary

to the entry of a final determination under subsections (d), (e), (f), or (g), such as sanctions for abuse of discovery or abuse of process in the proceedings leading to the entry of a final determination. *See Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1361 (Fed. Cir. 2000). But as the court held in *Viscofan*, we lack jurisdiction over actions of the Commission that are not ancillary to a final determination. That is the situation in this case, in which there was never a final determination on the merits entered by the Commission, given that Future Link withdrew its complaint following a settlement with a third party, and then successfully moved to terminate the proceeding based on that withdrawal of the complaint. Indeed, Realtek concedes it "has not invoked this Court's ancillary jurisdiction as a basis for review" of the Commission's sanctions decision. Reply Br. 13.

We recognize that section 1337(c) leaves open the question of which court would have jurisdiction to review a sanctions determination under subsection (h) that is not ancillary to a final determination. In other settings, courts have held that, in the absence of an indication of where judicial review will take place, "the normal default rule is that persons seeking review of agency action go first to district court rather than to a court of appeals." *Micei Int'l v. Dep't of Com.*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) (cleaned up); *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (Kavanaugh, J.) (quoting *Int'l Bhd. of Teamsters v. Peña*, 17 F.3d 1478, 1481 (D.C. Cir. 1994)); *see Bell v. New Jersey*, 461 U.S. 773, 777 n.3 (1983) ("The presumption that review is available, coupled with the absence of any indication in the statute that the decision is committed wholly to the discretion of the agency or that review is otherwise precluded, leads to the conclusion that the district courts would have had jurisdiction under the general grant of jurisdiction over cases involving federal questions." (citations

omitted)).[4]  Applying that principle here, we hold that in the absence of clear statutory authority granting us jurisdiction to review a Commission order of the sort at issue in this case, jurisdiction over Realtek's appeal from the Commission's denial of its request for sanctions does not lie in this court.  Accordingly, we are required to dismiss this appeal.

**DISMISSED**

Costs

No costs.

---

[4]    District court review of an order falling outside the scope of the first sentence of section 1337(c) has been sought and obtained in at least one instance.  *See Jubilant DraxImage Inc. v. U.S. Int'l Trade Comm'n*, 396 F. Supp. 3d 113, 119 (D.D.C. 2019).